[No. B149357. Second Dist., Div. One. Aug. 24, 2001.]

THRIFTY OIL CO., Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
ROCHELLE C. LINDER, Real Party in Interest.

**COUNSEL**

Bird, Marella, Boxer & Wolpert, Ronald J. Nessim, Mark T. Drooks, Thomas R. Freeman and Thomas V. Reichert for Petitioner.

No appearance for Respondent.

Daar & Newman and David Daar for Real Party in Interest.

**OPINION**

**VOGEL (MIRIAM A.), J.**—A retailer sold gasoline using a two-tier pricing system, one price for cash, another for credit cards. Signs that were "clear as day" were posted at each gas station to show the difference:

This opinion explains why, on the facts of this case, the retailer's pricing system was a permissible discount, not an unlawful surcharge.

## FACTS

In an action filed for herself and on behalf of others similarly situated, Rochelle C. Linder alleges that Thrifty Oil Co. violated Civil Code section 1748.1 (part of the Song-Beverly Credit Card Act of 1971, Civ. Code,

§ 1747 et seq.) by wrongfully imposing a surcharge on credit cardholders.[1] More specifically, Linder claims that customers who purchased gasoline at Thrifty's California service stations between May 1992 and May 1995 were compelled to pay an allegedly illegal surcharge of roughly four cents per gallon more than customers who paid in cash. (*Linder v. Thrifty Oil Co.* (2000) 23 Cal.4th 429, 434 [97 Cal.Rptr.2d 179, 2 P.3d 27].)[2]

Thrifty moved for summary adjudication of Linder's surcharge cause of action. In support of its motion, Thrifty presented evidence (including a declaration by Barry W. Berkett, Thrifty's vice-president) to show that it no longer operates any retail gas stations but that, when it did, it had a two-tier pricing strategy at some of its stations, "under which customers paid a different, lower price for purchases of gasoline by cash than by credit card." The two-tier pricing was available to all customers at each station that implemented two-tier pricing, and each of those stations had at least one four-foot by six-foot sign that identified both the cash and the credit card prices for each grade of gasoline. Thrifty also displayed on each gasoline pump both the cash and credit prices for the gasoline sold at that pump.

[1]Undesignated section references are to the Civil Code. Subdivision (a) of section 1748.1 provides: "No retailer in any sales, service, or lease transaction with a consumer may impose a surcharge on a cardholder who elects to use a credit card in lieu of payment by cash, check, or similar means. A retailer may, however, offer discounts for the purpose of inducing payment by cash, check, or other means not involving the use of a credit card, provided that the discount is offered to all prospective buyers." Subdivision (b) of section 1748.1 provides that a retailer who willfully violates this section and who then fails to refund the surcharge when demanded to do so is liable to the cardholder for three times the amount "at which actual damages are assessed," plus reasonable attorney's fees and costs. Subdivision (c) covers telephone sales, and subdivision (d) covers third-party credit card guarantee services. Subdivision (e) of section 1748.1 states the Legislature's intent when it enacted this statute in 1985: "It is the intent of the Legislature to promote the effective operation of the free market and protect consumers from deceptive price increases for goods and services by prohibiting credit card surcharges and *encouraging the availability of discounts by those retailers who wish to offer a lower price for goods and services purchased by some form of payment other than credit card.*" (Italics added; see Stats. 1985, ch. 913, § 1, p. 2908.) Section 1748.1 has never been the subject of a published opinion.

[2]This lawsuit was filed in 1995. After Thrifty answered Linder's second amended complaint, Linder moved to certify the case as a class action with two plaintiff classes (one based on the surcharge allegations discussed in this opinion, the other based on the credit card forms used by Thrifty, which Linder alleges were impermissible within the meaning of section 1747.8). The trial court denied Linder's certification motion in its entirety and we affirmed. (*Linder v. Thrifty Oil Co.* (Cal.App.).) Linder's petition for review was granted, and the Supreme Court reversed the order denying Linder's motion for class certification. (*Linder v. Thrifty Oil Co., supra,* 23 Cal.4th at pp. 448-449.) Following remand, Thrifty moved for summary adjudication of two of Linder's three causes of action. The trial court denied the motion for summary judgment, granted the motion for summary adjudication of the cause of action based on the credit card forms, and denied the motion for summary adjudication of the surcharge cause of action. The only issue before us at this time is the trial court's ruling on the surcharge cause of action. Linder's remaining cause of action seeks relief on an unfair competition theory. (Bus. & Prof. Code, § 17200 et seq.)

Berkett explained that the two prices reflected the different "costs to Thrifty of cash and credit card purchases: when a customer purchased gas by credit card, Thrifty was charged a fee for every MasterCard and Visa purchase, whereas there was no extra bank fee to Thrifty when customers purchased gas by cash. Thrifty implemented a two-tier pricing system that provided a lower cost to its cash customers, whose purchases accounted for more than 90% of the gas purchased at Thrifty stations. [¶] The benefit of the two-tier system was that the customer was able to make an informed decision as to whether to buy gas with cash, and get the lowest possible price, or to buy with a credit card, and pay a slightly higher price while getting the convenience and security of not carrying cash."[3] Thrifty's evidence included the photograph reproduced at the beginning of this opinion—a picture of one of its signs that Linder admitted showed "clear as day" that Thrifty used a two-tier pricing system.

Linder opposed the motion, but expressly admitted that Thrifty no longer operates the gas stations, expressly admitted that Thrifty had implemented a two-tier pricing strategy at some of its stations, and expressly admitted that the pictured signs had been posted. The only evidence offered by Linder was a declaration by George M. Brinton, Ph.D., an economist, who opined that, based on his review of Berkett's declaration and the photograph of the sign, "there is a surcharge imposed in such a situation. *It is likely that one can determine* that fact issue from the face of the transaction itself. A person *can compute* the surcharge that occurs from use of a higher price for a product in several ways after the higher price offered by a retailer has been accepted by the prospective buyers. [¶] Under economic principles, *one can reasonably determine* that the normal offering price to the public is the <u>cash price</u> shown in the photograph. When a company offers the same product on credit at a higher price than it offers that product for cash, the additional charge shown for credit is a surcharge for that service."[4] (Italics added, underscoring in original.)

Linder did *not* dispute Thrifty's evidence about the additional cost it incurs when its customers pay with credit cards, and did not offer any evidence to suggest that Thrifty's two-tier pricing system was not devised precisely as stated in Thrifty's evidence. Indeed, Linder's expert admitted

---

[3]Berkett's declaration also explained that Thrifty accepted only MasterCard and Visa and did not issue its own credit cards, and that the two-tier system applied only to gasoline and not to other products.

[4]As Thrifty points out, Linder's separate statement of facts does not refer to any of the "facts" set out in her expert's declaration, and the declaration is not mentioned in Linder's separate statement. For this reason, the trial court could have ignored the declaration. (*United Community Church v. Garcin* (1991) 231 Cal.App.3d 327, 337 [282 Cal.Rptr. 368].) As we explain below, the declaration does not save Linder's claim.

that, if otherwise lawful, a "surcharge amount" could "be justified in an economic sense if the higher credit price when compared to the lower cash price represents the actual cost to the retail company for the additional credit service." Beyond that, all Linder's expert had to say was that a "normal price" *could be* determined by examination of a retailer's business operations, and that economists "regularly work in evaluating such matters." He did not say that he had done any such thing in this case, or that he had been asked to do so. He also suggested that the "normal offering price" *could be determined* "from the number of service stations, as well as the volume of credit actually offered, when compared to cash transactions over the base period," but he did not say that he had made such a comparison, or that he had been asked to do so.

The trial court denied Thrifty's motion for summary adjudication, noting in its minute order that the issue was whether the "two sets of prices on a sign shows a surcharge or a discount," and concluding that the "interpretation of the sign presents a question of fact for the jury." Thrifty then filed a petition for a writ of mandate, asking us to compel the trial court to grant its motion for summary adjudication. We issued an order to show cause and set the matter for hearing.

### DISCUSSION

■■■ The material facts are not disputed. Thrifty's two-tier pricing was based on the different costs to Thrifty of cash purchases (no cost) and credit card purchases (bank fees). At the stations at which two-tier pricing was offered, it was offered to all customers in the manner shown in the photograph of the sign. These facts support Thrifty's motion for summary adjudication because they establish a permissible offer to all customers of a discount "for the purpose of inducing payment by cash, check, or other means not involving the use of a credit card" (§ 1748.1, subd. (a)), and because they establish a pricing system consistent with the Legislature's intent to "encourag[e] the availability of discounts by those retailers who wish to offer a lower price for goods and services purchased by some form of payment other than credit card" (§ 1748.1, subd. (e)).[5]

With that evidence, Thrifty met its burden. ■■■ As our Supreme Court explained in *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 849

---

[5]Thrifty's evidence also included a request for judicial notice of a news release distributed by Senator Herschel Rosenthal (the sponsor of the bill that enacted section 1748.1) on September 5, 1985, at about the time the bill was sent to the Governor. (Evid. Code, §§ 452, 454.) The news release describes the statute as one that would "prohibit merchants from adding surcharges on goods purchased with credit cards" but would, at the same time, *"encourage the offering of discounts on goods sold for cash, such as is common practice at gas stations."* (Italics added.) Linder did not oppose the request for judicial notice in the trial

[107 Cal.Rptr.2d 841, 24 P.3d 493], a defendant moving for summary judgment (or summary adjudication) has met its burden of showing that the plaintiff's cause of action has no merit if the defendant has shown that one or more elements of the cause of action cannot be established, or that there is a complete defense to that cause of action. The defendant is not required to "conclusively negate" an element of the plaintiff's cause of action, only to present some evidence to show that the plaintiff cannot prove a necessary element of her cause of action. ██ Put another way, Thrifty's evidence was sufficient to shift the burden of proof to Linder because Thrifty's evidence, standing alone, uncontroverted, and without submission of any issue to a trier of fact, would compel a defense verdict at trial. (*Id.* at p. 855.) ██ ██ ██ Accordingly, it was Linder's burden to show, if she could, that Thrifty's two-tier pricing system constituted "a surcharge on a cardholder who elect[ed] to use a credit card in lieu of payment by cash, check, or similar means." (§ 1748.1, subd. (a); Code Civ. Proc., § 437c; *Aguilar v. Atlantic Richfield Co., supra,* 25 Cal.4th at p. 849 [once the defendant has made the required showing, the burden shifts to the plaintiff to show, with evidence of specific facts and without relying on her pleading, that a triable issue of at least one material fact exists].)[6]

██ Linder did not meet her burden. Indeed, she did not present any evidence to dispute any material fact. Instead, she admitted (by her failure to present evidence to the contrary) that Thrifty's two-tier pricing system was based on the additional cost to Thrifty for credit card sales, and that the difference between the two prices was related to the actual cost to Thrifty. She admitted (through her expert's declaration) that a surcharge is justified "if the higher credit price when compared to the lower cash price represents the actual cost to the retail company for the additional credit service." The expert's musings about the various means by which a retailer's "normal price" *could be established* or *might be established* (by examination of a

court, and she does not oppose it here. The request should have been granted. (*Post v. Prati* (1979) 90 Cal.App.3d 626, 634 [153 Cal.Rptr. 511].)

[6]To the extent Linder contends that any two-tier pricing system is per se illegal, she is wrong. The Petroleum Act, Business and Professions Code section 13400 et seq., expressly authorizes and regulates discounts for cash purchases of gasoline. (E.g., Bus. & Prof. Code, §§ 13532, 13470.) She is similarly wrong when she argues (without authority) that the interpretation of section 1748.1 bears some relation to the Petroleum Act. The news release described above (fn. 5) explains that section 1748.1 was adopted to "prohibit merchants from adding surcharges on goods purchased with credit cards, *a practice many have started since a federal law against the practice expired last year.*" (Italics added.) Section 1748.1 applies to all retailers, not just gasoline retailers, and it was adopted to replace an expired federal law, not to enhance private enforcement of the Petroleum Act. (And see *People v. Fulvio* (1987) 136 Misc.2d 334 [517 N.Y.S.2d 1008, 1012] [invalidating a similar statute adopted to replace the expired federal statute, and noting that the purpose of the federal statute had been to permit merchants to have two-tier pricing systems and to " 'price cash purchases lower than credit purchases, if they [chose] to do so' "].)

retailer's business operations, or from the retailer's number of service stations, or from a comparison of the volume of credit actually offered to cash transactions over the base period) are wholly irrelevant—because the basis for Thrifty's price differential is uncontroverted, and because evidence about the manner in which Thrifty's evidence *could have been disputed* has nothing to do with the price of tomatoes. The expert's musings were pure speculation and, as such, insufficient to carry Linder's burden. (*Leslie G. v. Perry & Associates* (1996) 43 Cal.App.4th 472, 484, 487 [50 Cal.Rptr.2d 785] [the fact that an issue is difficult to establish does not provide a plaintiff with an excuse to dispense with the introduction of some reasonably reliable evidence, something more than mere speculation or conjecture]; see also *Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 776-778 [107 Cal.Rptr.2d 617, 23 P.3d 1143].)[7]

Linder's failure to meet her burden of proof means that Thrifty is entitled to summary adjudication—because Thrifty has established, as a matter of law, that its two-tier pricing system was a discount by a retailer who wanted to offer a lower price for gasoline to its customers who paid with cash (§ 1748.1, subd. (e)), *not* an impermissible surcharge on a cardholder who elected to use a credit card in lieu of payment by cash. (§ 1748.1, subd. (a); cf. *Leslie G. v. Perry & Associates, supra,* 43 Cal.App.4th at p. 484 [when the plaintiff's failure to carry her burden leaves the court with a cause of action that remains a matter of pure speculation or conjecture, or even where the probabilities are at best evenly balanced, it becomes the duty of the court to determine the issue in favor of the defendant as a matter of law].)

To conclude otherwise in this case would mean that every two-tier pricing system includes an unlawful surcharge on the customer who pays by credit card, a conclusion that would be wholly inconsistent with the Legislature's stated intent—to promote the effective operation of the free market by encouraging the availability of discounts by retailers who wish to offer a lower price for cash purchases, and to protect consumers from deceptive price increases by prohibiting credit card surcharges. (§ 1748.1, subd. (e).) Aside from that, we fail to see how a posted price difference that (in Linder's words) was as "clear as day" could be deceptive in the context of a statute intended to prevent a retailer from adding an *undisclosed* surcharge to

---

[7]As Thrifty observes in its reply brief, Linder's opposition to Thrifty's petition is long on rhetoric and "issue spotting" but short on law and even shorter on facts. As Thrifty also notes, "this is not an issue spotting essay, it is summary adjudication." By way of example, Linder *contends* the statute permits only those price differentials that perfectly track the extra cost incurred by the retailer on credit card purchases (the "actual cost" differential). But she offers no *evidence* or *authority* to support her contention, and does not explain the logic of an interpretation that would require a retailer to open its books to the public before it could implement a two-tier pricing system.

a credit card purchase. (§ 1748.1, subd. (a) [a retailer may "offer discounts for the purpose of inducing payment by cash . . . provided that the discount is offered to all prospective buyers"].)[8] ■ Our role is to give effect to the Legislature's intent and to give the statute the commonsense interpretation to which it is entitled, not to defeat the Legislature's intent by means of a strained interpretation that encourages mischief or absurdity. (*Aquilino v. Marin County Employees' Retirement Assn.* (1998) 60 Cal.App.4th 1509, 1516 [70 Cal.Rptr.2d 870]; *DeYoung v. City of San Diego* (1983) 147 Cal.App.3d 11, 18 [194 Cal.Rptr. 722], disapproved on other grounds in *Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 10, 15 [78 Cal.Rptr.2d 1, 960 P.2d 1031].)

## DISPOSITION

The petition is granted. A peremptory writ shall issue commanding the trial court (1) to vacate its order denying Thrifty's motion for summary adjudication of its surcharge cause of action, and (2) to enter a new order granting that motion. Thrifty is entitled to its costs of these writ proceedings.

Ortega, Acting P. J., and Mallano, J., concurred.

. The petition of real party in interest for review by the Supreme Court was denied December 12, 2001.

---

[8]The news release described above (fn. 5) includes this statement by the bill's sponsor: " 'Since surcharging is not advertised, unlike cash discounts, the practice can catch consumers unaware, thereby keeping consumers from effective comparison shopping.' "