**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| ITALIAN COLORS RESTAURANT, a California Business Entity; ALAN CARLSON, Owner, Italian Colors Restaurant; LAURELWOOD CLEANERS, LLC, DBA Laurelwood Cleaners and Laundry, DBA Milo's Cleaners and Laundry, a California Limited Liability Company; JONATHAN EBRAHIMIAN, Owner, Laurelwood Cleaners, LLC; FAMILY LIFE CORPORATION, DBA Family Graphics, a California Corporation; TOSHIO CHINO, Owner, Family Life Corporation; STONECREST GAS & WASH, a California Business Entity; SALAM RAZUKI, Co-owner, Stonecrest Gas & Wash; LEON'S TRANSMISSION SERVICE, INC., a California Corporation; VINCENT ARCHER, Administrator/Controller, Leon's Transmission Service, Inc., *Plaintiffs-Appellees*, | No. 15-15873<br><br>D.C. No. 2:14-cv-00604-MCE-DAD<br><br><br>OPINION |
| v. | |
| XAVIER BECERRA, Attorney General, State of California, *Defendant-Appellant*. | |

Appeal from the United States District Court
for the Eastern District of California
Morrison C. England, Jr., District Judge, Presiding

Argued and Submitted August 17, 2017
San Francisco, California

Filed January 3, 2018

Before:  Diarmuid F. O'Scannlain and Johnnie B.
Rawlinson, Circuit Judges, and Sarah S. Vance,[*]
District Judge.

Opinion by Judge Vance

## SUMMARY[**]

### Civil Rights

The panel affirmed the district court's summary
judgment in favor of plaintiffs in an action challenging the
constitutionality of California Civil Code Section 1748.1(a),
which prohibits retailers from imposing a surcharge on
customers who make payments with credit cards, but permits
discounts for payments by cash or other means.

The panel first held that it was satisfied that plaintiffs had
modified their speech and behavior based on a credible

---

[*] The Honorable Sarah S. Vance, United States District Judge for
the Eastern District of Louisiana, sitting by designation.

[**] This summary constitutes no part of the opinion of the court.  It
has been prepared by court staff for the convenience of the reader.

threat of Section 1748.1's enforcement.  Plaintiffs therefore satisfied their burden of establishing standing.

The panel limited its review of the surcharge law to a First Amendment as-applied challenge based on plaintiffs' representation that they were not bringing a facial challenge. The panel further held that Section 1748.1 regulated speech and rejected the Attorney General's argument that the Section instead regulated conduct.

Applying intermediate scrutiny, the panel held that the activity to which plaintiffs' desired speech was directed – charging credit card users more than cash users – was not unlawful or misleading.  The panel held that enforcing section 1748.1 against plaintiffs did not directly advance California's asserted interest in preventing consumer deception.  Finally, the panel held that there was no reasonable fit between the broad scope of Section 1748.1 and the asserted state interest, and therefore the statute was more extensive than necessary.  The panel therefore agreed with the district court that Section 1748.1 violated the First Amendment, but only as applied to plaintiffs.

## COUNSEL

John W. Killeen (argued) and Anthony R. Hakl, Deputy Attorneys General; Stepan A. Haytayan, Supervising Deputy Attorney General; Douglas J. Woods and Thomas S. Patterson, Senior Assistant Attorneys General; Xavier Becerra, Attorney General; Office of the Attorney General, Sacramento, California; for Defendant-Appellant.

Deepak Gupta (argued) and Jonathan E. Taylor, Gupta Wessler PLLC, Washington, D.C.; Mark Wendorf,

Reinhardt Wendorf & Blanchfield, St. Paul, Minnesota; Kevin K. Eng, Markun Zusman Freniere & Compton LLP, San Francisco, California; for Plaintiffs-Appellees.

Michael E. Chase, Boutin Jones Inc., Sacramento, California, for Amicus Curiae Credit Union National Association.

Richard A. Arnold, William J. Blechman, and James T. Almon, Kenny Nachwalter PA, Miami, Florida, for Amici Curiae Safeway Inc., The Kroger Co., Walgreen Co., Albertson's LLC, and Hy-Vee Inc.

Thomas S. Knox, Knox Lemmon & Anapolsky LLP, Sacramento, California, for Amicus Curiae California Retailers Association.

Dale A. Stern, Downey Brand LLP, Sacramento, California, for Amicus Curiae California Grocers Association.

Eric L. Bloom, Hangley Aronchick Segal Pudlin & Schiller, Harrisburg, Pennsylvania, for Amicus Curiae Rite Aid Corporation.

John J. McDermott, General Counsel, Arlington, Virginia, as and for Amicus Curiae National Apartment Association.

**OPINION**

VANCE, District Judge:

Plaintiffs challenge the constitutionality of California Civil Code Section 1748.1(a). This statute prohibits retailers

from imposing a surcharge on customers who make payments with credit cards, but permits discounts for payments by cash or other means. The district court granted summary judgment in favor of plaintiffs, declared the statute both an unconstitutional restriction of speech and unconstitutionally vague, and permanently enjoined its enforcement. We hold that the statute as applied to these plaintiffs violates the First Amendment. Thus, we affirm the district court's judgment. We also narrow the scope of the district court's relief to apply only to plaintiffs.

## I. BACKGROUND

### A. Factual Background

Plaintiffs are five California businesses and their owners or managers: Italian Colors Restaurant and owner Alan Carlson; Laurelwood Cleaners and owner Jonathan Ebrahimian; Family Graphics and owner Toshio Chino; Stonecrest Gas & Wash and owner Salam Razuki; and Leon's Transmission Service and administrator Vincent Archer. Plaintiffs pay thousands of dollars every year in credit card fees, which are typically 2–3% of the cost of each transaction. With the exception of Stonecrest, each plaintiff charges a single price for goods, with prices slightly higher than they would be otherwise to compensate for the credit card fees. Stonecrest currently offers discounts to customers who use cash or debit cards.

Each plaintiff represents that it would impose a credit card surcharge if it were legal to do so. Stonecrest, which already offers different prices for cash customers and credit card customers, would describe this difference as a surcharge rather than a discount. Italian Colors would also charge different prices and label the difference as a surcharge. Laurelwood would charge different prices and

"express the price difference as an additional percentage fee, or surcharge, that [customers] will pay if they decide to use credit."   Likewise, Family Graphics "would have two different prices," and "would express that difference as a percentage fee that is incurred for using a credit card."  And Leon's Transmission would "charge a fee for credit-card transactions," *i.e.*, offer a base price and impose an additional surcharge for using a credit card.  Plaintiffs have not imposed credit card surcharges for fear of violating Section 1748.1.

Plaintiffs put forth several reasons why they desire to impose credit card surcharges rather than offer cash discounts.  First, they contend that credit card surcharges are a more effective way of conveying to customers the high cost of credit card fees.  Second, plaintiffs state that their current practice forces them to raise their prices slightly to compensate for the credit card fees, making their goods and services appear more expensive than they would be otherwise.

Third, plaintiffs believe that imposing a credit card surcharge would be more effective than offering a cash discount in encouraging buyers to use cash.  Scholars have posited that credit card companies prefer cash discounts over credit card surcharges for precisely this reason.  *See* Amos Tversky & Daniel Kahneman, *Rational Choice and the Framing of Decisions*, 59 J. Bus. S251, S261 (1986). Although mathematically equivalent, surcharges may be more effective than discounts because "the frame within which information is presented can significantly alter one's perception of that information, especially when one can perceive the information as a gain or a loss."  Jon D. Hanson & Douglas A. Kysar, *Taking Behavioralism Seriously: Some Evidence of Market Manipulation*, 112 Harv. L. Rev. 1420,

1441 (1999).   Indeed, research has shown that economic actors are more likely to change their behavior if they are presented with a potential loss than with a potential gain. Plaintiffs point to one study in which 74% of consumers reacted negatively to a credit card surcharge, while only 22% reacted positively to cash discounts.  *See* Adam J. Levitin, *The Antitrust Super Bowl: America's Payment Systems, No-Surcharge Rules, and the Hidden Costs of Credit*, 3 Berkeley Bus. L.J. 265, 280–81 (2005).

## B.  Statutory Background

Section 1748.1 succeeded a now-lapsed federal surcharge ban.  In 1974, Congress amended the Truth in Lending Act (TILA) to provide that credit card companies "may not, by contract or otherwise, prohibit any [retailer] from offering a discount to a cardholder to induce the cardholder to pay by cash, check, or similar means rather than use a credit card."  Act of Oct. 28, 1974, Pub. L. No. 93-495, § 167, 88 Stat. 1500 (codified at 15 U.S.C. § 1666f(a)).   Two years later, Congress again amended TILA to prohibit retailers from "impos[ing] a surcharge on a cardholder who elects to use a credit card in lieu of payment by cash, check, or similar means."  Act of Feb. 27, 1976, Pub. L. No. 94-222, § 3(c)(1), 90 Stat. 197 (formerly codified at 15 U.S.C. § 1666f(a)(2)).  This amendment also added definitions to the statute, defining "discount" as "a reduction made from the regular price," and "surcharge" as "any means of increasing the regular price to a cardholder which is not imposed upon customers paying by cash, check, or similar means."  *Id.* § 3(a) (codified at 15 U.S.C. § 1602(q)–(r)).

Congress renewed the surcharge ban in 1981.  Act of July 27, 1981, Pub. L. No. 97-25, § 201, 95 Stat. 144.  At that time, Congress also added a definition of "regular

price": the posted price if only one price was posted, or the credit card price if either no price was posted or both a credit card price and a cash price were posted. *Id.* § 102(a) (codified at 15 U.S.C. § 1602(y)). This definition effectively limited the scope of the surcharge ban to only "posting a single price and charging credit card users more than that posted price." *Expressions Hair Design v. Schneiderman* (*Expressions III*), 137 S. Ct. 1144, 1147 (2017).

The federal surcharge ban expired in 1984. Several states, including California, then adopted surcharge bans of their own. *See* Cal. Civ. Code § 1748.1; Colo. Rev. Stat. § 5-2-212; Conn. Gen. Stat. § 42-133ff; Fla. Stat. § 501.0117; Kan. Stat. § 16a-2-403; Me. Rev. Stat. tit. 9-A, § 8-303(2) (repealed Sept. 27, 2011); Mass. Gen. Laws ch. 140D, § 28A; N.Y. Gen. Bus. Law § 518; Okla. Stat. tit. 14a, § 2-211; Tex. Bus. & Com. Code § 604A.0021.

California enacted its surcharge ban, codified at Civil Code Section 1748.1, in 1985. The law provides: "No retailer in any sales, service, or lease transaction with a consumer may impose a surcharge on a cardholder who elects to use a credit card in lieu of payment by cash, check, or similar means." Cal. Civ. Code § 1748.1(a). But the law permits a retailer to "offer discounts for the purpose of inducing payment by cash, check, or other means not involving the use of a credit card, provided that the discount is offered to all prospective buyers." *Id.* Willful violators of the surcharge ban are liable for three times actual damages, as well as the cardholder's attorney's fees and costs in an action enforcing the ban. *Id.* § 1748.1(b). The stated purpose of Section 1748.1 is "to promote the effective operation of the free market and protect consumers from deceptive price increases for goods and services by prohibiting credit card surcharges and encouraging the

availability of discounts by those retailers who wish to offer a lower price for goods and services" purchased by cash customers. *Id.* § 1748.1(e).

In addition to these statutory provisions, credit card companies also restricted surcharges by contract. Although under federal law credit card companies could not prohibit retailers from offering cash discounts, *see* 15 U.S.C. § 1666f(a), they could—and did—contractually prohibit surcharges. *See Expressions III*, 137 S. Ct. at 1147. These contractual surcharge bans have been subject to antitrust challenges, culminating in a since-vacated class action settlement that required Visa and MasterCard to eliminate their surcharge bans. *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 986 F. Supp. 2d 207, 230–34 (E.D.N.Y. 2013), *rev'd and vacated*, 827 F.3d 223 (2d Cir. 2016).

## C. Procedural History

On March 5, 2014, plaintiffs sued the Attorney General of California in her official capacity[1] in the District Court for the Eastern District of California.[2] Plaintiffs alleged that Section 1748.1 operates in a manner that restricts speech, based on both content and the identity of the speaker, in violation of the First Amendment. Plaintiffs also alleged that Section 1748.1 is unconstitutionally vague under the Due Process Clause of the Fourteenth Amendment. Plaintiffs

---

[1] Kamala Harris was the California Attorney General when the lawsuit was filed. After Harris was elected to the United States Senate, Xavier Becerra replaced Harris as Attorney General.

[2] Plaintiffs amended their complaint to add Stonecrest and Leon's Transmission, and their respective owners, as plaintiffs on April 1, 2014.

sought a declaration that Section 1748.1 is unconstitutional and asked for its enforcement to be permanently enjoined.

The parties filed cross-motions for summary judgment. On March 25, 2015, the district court ruled that plaintiffs had standing to pursue their constitutional claims, that the First Amendment applied to Section 1748.1 because it regulated more than economic conduct, and that Section 1748.1 did not pass muster under intermediate scrutiny. The district court also found that Section 1748.1 was unconstitutionally vague. Accordingly, the district court granted plaintiffs' motion for summary judgment, denied the Attorney General's motion for summary judgment, declared the statute unconstitutional, and permanently enjoined its enforcement.

## II. DISCUSSION

### A. Standard of Review

This Court reviews summary judgment rulings *de novo*. *Zetwick v. County of Yolo*, 850 F.3d 436, 440 (9th Cir. 2017). "Summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, there is no genuine dispute as to any material fact." *Id.* (quoting *United States v. JP Morgan Chase Bank Account No. Ending 8215*, 835 F.3d 1159, 1162 (9th Cir. 2016)). The Court also reviews standing determinations *de novo*. *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 902 (9th Cir. 2002).

### B. Standing

The district court held that, notwithstanding the meagre enforcement history of Section 1748.1, there is a credible threat of enforcement should plaintiffs communicate prices in the way they desire. We agree.

To establish standing, a plaintiff must show: (1) she suffered an "injury in fact," which is an "actual or imminent" invasion of a legally protected interest that is "concrete and particularized"; (2) the injury must be "fairly traceable" to the challenged conduct of the defendant; and (3) it must be likely that the plaintiff's injury will be redressed by a favorable judicial decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (internal citations and alterations omitted). The injury requirement does not force a plaintiff to "await the consummation of threatened injury to obtain preventive relief." *Blanchette v. Conn. Gen. Ins. Corps.*, 419 U.S. 102, 143 (1974) (quoting *Pennsylvania v. West Virginia*, 262 U.S. 553, 593 (1923)). Instead, "[i]t is sufficient for standing purposes that the plaintiff intends to engage in 'a course of conduct arguably affected with a constitutional interest' and that there is a credible threat that the challenged provision will be invoked against the plaintiff." *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1154–55 (9th Cir. 2000) (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)).

First Amendment challenges "present unique standing considerations" because of the "chilling effect of sweeping restrictions" on speech. *Ariz. Right to Life Political Action Comm. v. Bayless* (*ARLPAC*), 320 F.3d 1002, 1006 (9th Cir. 2003). In order to avoid this chilling effect, the "Supreme Court has endorsed what might be called a 'hold your tongue and challenge now' approach rather than requiring litigants to speak first and take their chances with the consequences." *Id.* (citing *Dombrowski v. Pfister*, 380 U.S. 479, 486 (1965)).

Even in the First Amendment context, a plaintiff must show a credible threat of enforcement. *Lopez v. Candaele*, 630 F.3d 775, 786 (9th Cir. 2010); *LSO*, 205 F.3d at 1155. In determining whether a plaintiff faces such a credible

threat in the pre-enforcement context, this Court considers three factors: 1) the likelihood that the law will be enforced against the plaintiff; 2) whether the plaintiff has shown, "with some degree of concrete detail," that she intends to violate the challenged law; and 3) whether the law even applies to the plaintiff. *Lopez*, 630 F.3d at 786. But "when the threatened enforcement effort implicates First Amendment rights, the [standing] inquiry tilts dramatically toward a finding of standing." *LSO*, 205 F.3d at 1155.

The Court first addresses whether Section 1748.1 applies to plaintiffs. This inquiry requires us to interpret the scope of the statute. By its terms, Section 1748.1 simply prohibits credit card surcharges. The statute does not define "surcharge," nor has the California Supreme Court interpreted the provision. Of course, the statute does not generally prohibit charging credit card customers more than cash customers—to the contrary, it explicitly permits cash discounts. And a California Court of Appeal has held that the statute does not prohibit a "two-tier pricing system" in which the difference in prices is communicated neither as a surcharge nor as a discount. *Thrifty Oil Co. v. Superior Court of L.A. Cty.*, 111 Cal. Rptr. 2d 253, 259–60 (Cal. Ct. App. 2001)

There are two remaining pricing schemes possibly covered by the statute. First, a retailer may post a single sticker price and then charge an extra fee for credit card users. As counsel for the Attorney General conceded at oral argument, Section 1748.1 plainly covers this single-sticker-pricing scheme. *See Expressions Hair Design v. Schneiderman* (*Expressions II*), 808 F.3d 118, 129 (2d Cir. 2015) (noting that New York's surcharge ban "clearly prohibits" a single-sticker-pricing scheme), *vacated*, 137 S. Ct. 1144; *cf. Lopez*, 630 F.3d at 788 (noting that "plaintiffs'

claims of future harm lack credibility when . . . the enforcing authority has disavowed the applicability of the challenged law to the plaintiffs"). Indeed, this scheme accords with the ordinary meaning of "surcharge": an extra fee in addition to the price the retailer would otherwise charge a customer. *See Random House College Dictionary* 1321 (rev'd ed. 1980) (defining "surcharge" as "an additional charge, tax, or cost"); *see also Surcharge*, *Merriam-Webster Dictionary* Online, www.merriam-webster.com (defining "surcharge" as "an additional tax, cost, or impost"). Second, a retailer may post two prices—one for cash customers, the other for credit card customers—and label the credit card price a surcharge. *See Expressions Hair Design v. Schneiderman* (*Expressions I*), 975 F. Supp. 2d 430, 442–44 (S.D.N.Y. 2013) (Rakoff, J.) (distinguishing between single-sticker-pricing and dual-sticker-pricing schemes, but finding that New York's surcharge ban covers both). We need not reach whether Section 1748.1 covers this dual-sticker-pricing scheme because, as explained below, it is not at issue in this as-applied challenge.

All five plaintiffs desire to post a single price and charge an extra fee on customers who use credit cards. Admittedly, some of the plaintiffs are clearer about their intentions than others. Ebrahimian's declaration states that Laurelwood would impose "an additional percentage fee, or surcharge, that [customers] will pay if they decide to use credit." Chino's declaration states that Family Graphics would also impose "a percentage fee that is incurred for using a credit card." Likewise, Archer's declaration states that Leon's Transmission would "charge a fee for credit-card transactions." These plaintiffs' desired pricing schemes clearly qualify as surcharges under Section 1748.1.

The owners of Stonecrest and Italian Colors state somewhat vaguely that they would charge different prices to cash customers and credit card customers, and would label the difference as a surcharge. But a close reading of the declarations reveals that these plaintiffs seek to impose a single-sticker-pricing scheme like the other plaintiffs. Carlson states that Italian Colors does not want to use cash discounts because they would make the restaurant's "advertised prices look higher than they are." This statement suggests that Italian Colors contemplates posting only a single set of "advertised prices," and desires to charge an extra fee on top of those prices for credit card customers. Razuki states that Stonecrest's customers would react differently if Stonecrest were able to say that it charges "a fee, or a surcharge, for credit card transactions," rather than offers a cash discount. This statement suggests that Razuki equates surcharges with fees, and wants to impose an added fee on credit card users—not merely label the price difference as a "surcharge." Moreover, at oral argument, counsel for plaintiffs confirmed that all plaintiffs—including Stonecrest and Italian Colors—would like to employ a single-sticker-pricing scheme. Therefore, the record shows that all plaintiffs wish to post a single sticker price and then charge an extra fee for credit card users, a pricing scheme clearly prohibited by Section 1748.1.

Turning to the likelihood of enforcement, plaintiffs concede that California has not communicated any threat or warning of impending proceedings against them. But a plaintiff may suffer injury by being "forced to modify [her] speech and behavior to comply with the statute." *ARLPAC*, 320 F.3d at 1006. Such "self-censorship" may be a sufficient injury under Article III, "even without an actual prosecution." *Virginia v. Am. Booksellers Ass'n*, 484 U.S. 383, 393 (1988); *see also Libertarian Party of L.A. Cty. v.*

*Bowen*, 709 F.3d 867, 870 (9th Cir. 2013) ("[A] chilling of the exercise of First Amendment rights is, itself, a constitutionally sufficient injury.").

Plaintiffs assert that they have avoided posting credit card surcharges for fear of an enforcement action against them.  Several circumstances suggest that this fear is reasonable.  First, California has not suggested that Section 1748.1 will not be enforced if plaintiffs (or others) decide to violate the law, nor has the law "fallen into desuetude." *ARLPAC*, 320 F.3d at 1006–07 (citing *Bland v. Fessler*, 88 F.3d 729, 737 (9th Cir. 1996)); *see also LSO*, 205 F.3d at 1155 ("Courts have also considered the Government's failure to disavow application of the challenged provision as a factor in favor of a finding of standing.").  At a hearing on the cross-motions for summary judgment, the Deputy Attorney General refused to stipulate that California will not enforce the statute.  And when the district court suggested enforcement would be likely if a chain like Home Depot or Wal-Mart initiated surcharges, the Deputy Attorney General responded that the suggestion was "certainly a reasonable assertion."  Moreover, even if the Attorney General would not enforce the law, Section 1748.1(b) gives private citizens a right of action to sue for damages.  In fact, a California citizen recently filed a class action lawsuit in the Central District of California alleging violations of Section 1748.1. The court in that case agreed with the district court below that the statute violates the First Amendment, and granted defendants' motion for summary judgment.  *See Jang v. Asset Campus Hous., Inc.*, No. 15-1067, 2017 WL 2416376, at \*3–7 (C.D. Cal. May 18, 2017).

California's reliance on Section 1748.1's sparse enforcement history is misplaced.  Although the parties cite only one published case involving the enforcement of

Section 1748.1, *see Thrifty Oil*, 111 Cal. Rptr. 2d 253, "enforcement history alone is not dispositive." *LSO*, 205 F.3d at 1155.   Moreover, as the Supreme Court recognized in *Expressions III*, major credit card companies did not drop their contractual provisions banning surcharges until 2013.   137 S. Ct. at 1148.   California's ban on surcharges was likely not enforced in the past because retailers were contractually barred from surcharging, and thus there were few, if any, violations to punish.

Finally, the Court examines whether plaintiffs have shown that they have a concrete plan to impose credit card surcharges.   "A general intent to violate a statute at some unknown date in the future does not rise to the level of an articulated, concrete plan." *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000) (en banc).   But "plaintiffs may carry their burden of establishing injury in fact when they provide adequate details about their intended speech." *Lopez*, 630 F.3d at 787.   Each declaration makes clear that if it were legal to do so, plaintiffs would charge more for credit card purchases at their respective businesses and communicate to their customers that this additional charge is a surcharge for credit cards.[3]   Far from asserting a vague, generalized, or "hypothetical intent to violate the law," *Thomas*, 220 F.3d at 1139, plaintiffs have declared their specific intent to impose these surcharges. Moreover, they describe "when, to whom, where, [and] under what circumstances," *id.*, they would do so: plaintiffs would impose credit card surcharges at their stores, on their

---

[3] Indeed, Ebrahimian states that Laurelwood charged additional fees for credit card users in the 1990s before learning of California's surcharge ban.

customers, when credit card surcharges are legal.  This is enough to show a concrete plan.

Considering these factors, and keeping in mind that "when the threatened enforcement effort implicates First Amendment rights, the [standing] inquiry tilts dramatically toward a finding of standing," *LSO*, 205 F.3d at 1155, the Court is satisfied that plaintiffs have modified their speech and behavior based on a credible threat of Section 1748.1's enforcement.  This is an actual injury to a legally protected interest, fairly traceable to Section 1748.1, and it is likely that this injury will be redressed by a favorable decision enjoining the enforcement of the law.  Plaintiffs have therefore satisfied their burden of establishing standing.

## C.  Plaintiffs' First Amendment Challenge

The district court held that Section 1748.1 is a content-based restriction on commercial speech rather than an economic regulation.  Applying intermediate scrutiny, *see Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 561–66 (1980), the district court found that the surcharges plaintiffs desire to post are neither misleading nor related to unlawful activity; that the state's asserted interest in preventing consumer deception, though substantial, is not advanced by Section 1748.1; and that there is no reasonable fit between that state interest and the scope of Section 1748.1.  Thus, the district court struck down the statute as violating the First Amendment.

### 1.  *Whether Plaintiffs' Challenge Is Facial or As Applied*

As an initial matter, the parties dispute whether plaintiffs' First Amendment challenge is facial or as applied. The distinction affects plaintiffs' burden of establishing

Section 1748.1's unconstitutionality. If plaintiffs' challenge is as applied, then they must show only that the statute unconstitutionally regulates plaintiffs' own speech. But if their challenge is facial, then they must show either that "'no set of circumstances exists under which [the challenged law] would be valid,' or that it lacks any 'plainly legitimate sweep.'" *Ctr. for Competitive Politics v. Harris*, 784 F.3d 1307, 1314–15 (9th Cir. 2015) (alteration in original) (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987); *Washington v. Glucksberg*, 521 U.S. 702, 740 n.7 (1997) (Stevens, J., concurring)). The distinction also affects the proper scope of injunctive relief. While "[a] successful challenge to the facial constitutionality of a law invalidates the law itself," a successful as-applied challenge invalidates "only the particular application of the law." *Foti v. City of Menlo Park*, 146 F.3d 629, 635 (9th Cir. 1998).

Before this Court, plaintiffs press only an as-applied challenge. They did the same before the district court.[4] The district court nevertheless enjoined the law in its entirety—relief that would have been appropriate only if plaintiffs had prevailed on a facial challenge. A lower court's treatment of a claim as facial in nature, however, does not require an appellate court to do the same. In *Expressions II*, for example, the Second Circuit treated the plaintiffs' challenge as both facial and as applied. 808 F.3d at 130. But before the Supreme Court, the plaintiffs disclaimed any facial

---

[4] Plaintiffs stated in a summary judgment brief that they were "simply requesting the same relief granted by Judge Rakoff in *Expressions*." Judge Rakoff enjoined New York's enforcement of the law only against the plaintiffs in that case. *See* Stipulated Final Judgment and Permanent Injunction, *Expressions I*, 975 F. Supp. 2d 430 (No. 13-3775), 2013 WL 7203883, at *2 ("[T]he Court permanently enjoins the defendants from enforcing New York General Business Law § 518 *against the plaintiffs*." (emphasis added)).

challenge. *See Expressions III*, 137 S. Ct. at 1149. The Court took the plaintiffs "at their word" and limited its review to their as-applied challenge. *Id.* We do the same.

### 2. Whether Section 1748.1 Restricts Plaintiffs' Commercial Speech

The parties also dispute whether Section 1748.1 even regulates speech. The Attorney General argues that Section 1748.1 restricts conduct—namely, the practice of imposing a surcharge for credit card users. The Supreme Court's opinion in *Expressions III*, published after the parties submitted briefing in this case, forecloses the Attorney General's argument.

The Court in *Expressions III* held that New York's surcharge ban "regulat[es] the communication of prices rather than prices themselves." 137 S. Ct. at 1151. The Second Circuit had held that the law "regulates conduct, not speech." *Expressions II*, 808 F.3d at 135. New York's law provides that "[n]o seller in any sales transaction may impose a surcharge on a holder who elects to use a credit card in lieu of payment by cash, check, or similar means."[5] N.Y. Gen. Bus. Law § 518. The Supreme Court first noted that this statute "tells merchants nothing about the amount they are allowed to collect from a cash or credit card payer." *Expressions III*, 137 S. Ct. at 1151. "What the law does regulate is how sellers may communicate their prices." *Id.* The Court noted, by way of example:

---

[5] Although New York's law does not explicitly permit discounts, the law has been interpreted to allow them. *See Expressions I*, 975 F. Supp. 2d at 436.

> A merchant who wants to charge $10 for cash and $10.30 for credit may not convey that price any way he pleases. He is not free to say "$10, with a 3% credit card surcharge" or "$10, plus $0.30 for credit" because both of those displays identify a single sticker price—$10—that is less than the amount credit card users will be charged.

*Id.* The Court therefore vacated the Second Circuit's decision and remanded for consideration of whether New York's surcharge ban survives First Amendment scrutiny.[6] *Id.* at 1152.

Like the plaintiffs in *Expressions*, plaintiffs in this case want to post a single sticker price and charge an extra fee for credit card use. Section 1748.1 prohibits plaintiffs from expressing their prices in this way, but it does allow retailers to post a single sticker price and offer discounts to customers paying with cash—despite the mathematical equivalency between surcharges and discounts. Thus, Section 1748.1, like New York's surcharge ban, regulates commercial speech.

---

[6] Two other circuits have weighed in on whether surcharge bans implicate the First Amendment. In *Rowell v. Pettijohn*, 816 F.3d 73 (5th Cir. 2016), the Fifth Circuit held that Texas's surcharge law did not regulate speech, while in *Dana's Railroad Supply v. Attorney General, Florida*, 807 F.3d 1235, 1239 (11th Cir. 2015), the Eleventh Circuit held that Florida's ban did. The Supreme Court vacated the Fifth Circuit's decision, *Rowell v. Pettijohn*, 137 S. Ct. 1431 (2017), and denied certiorari in the Florida case, *Bondi v. Dana's R.R. Supply*, 137 S. Ct. 1452 (2017).

### 3. Whether Section 1748.1 Survives Intermediate Scrutiny

Restrictions on commercial speech must survive intermediate scrutiny under *Central Hudson*. *See Retail Digital Network, LLC v. Prieto*, 861 F.3d 839, 841 (9th Cir. 2017) (en banc). The *Central Hudson* test first asks whether the speech is either misleading or related to illegal activity. 447 U.S. at 563–64. If the speech "is neither misleading nor related to unlawful activity," then "[t]he State must assert a substantial interest to be achieved by" the regulation. *Id.* at 564. The regulation must directly advance the asserted interest, and must not be "more extensive than is necessary to serve that interest." *Id.* at 566. California's burden under this test is "heavy," *44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 516 (1996), and the Attorney General cannot satisfy it "by mere speculation or conjecture," *Edenfield v. Fane*, 507 U.S. 761, 770 (1993).

#### a. Plaintiffs' speech concerns lawful activity and is not misleading

It is obvious that the activity to which plaintiffs' desired speech is directed—charging credit card users more than cash users—is not unlawful. *Cent. Hudson*, 447 U.S. at 564. After all, Section 1748.1 permits cash discounts.

Additionally, the Attorney General does not articulate why plaintiffs' desired pricing scheme would be misleading. Plaintiffs can already charge credit card customers more than cash customers. They seek to communicate the difference in the form of a surcharge rather than a discount. To paraphrase the Eleventh Circuit, imposing a surcharge rather than offering a discount is no more misleading than calling the weather *warmer* in New Orleans rather than *colder* in San Francisco. *Dana's R.R. Supply*, 807 F.3d at 1249.

To be sure, credit card surcharges can be deceptive, especially if they are imposed surreptitiously at the point of sale.  The Attorney General focuses on such bait-and-switch surcharges, and their potential to deceive, in arguing that Section 1748.1 targets misleading speech.  But nothing in the record suggests that plaintiffs desire to impose credit card surcharges in this way.   To the contrary, plaintiffs' declarations all state that plaintiffs want to *communicate*, not conceal, credit card surcharges.  Thus, plaintiffs' desired pricing schemes are not misleading.

> b. *Enforcing Section 1748.1 against plaintiffs does not directly advance California's asserted interest*

The Attorney General, quoting Section 1748.1 itself, asserts that the state's interest in banning surcharges is to "promote the effective operation of the free market and protect consumers from deceptive price increases."  Cal. Civ. Code § 1748.1(e).  The Supreme Court has accepted that preventing consumer deception by "ensuring the accuracy of commercial information in the marketplace" is a substantial state interest.  *Edenfield*, 507 U.S. at 769.

But the Attorney General must do more than merely identify a state interest served by the statute.  Under the third prong of the *Central Hudson* test, the Attorney General "must demonstrate that the harms [he] recites are real and that [the speech] restriction will in fact alleviate them to a material degree."  *Greater New Orleans Broad. Ass'n, Inc. v. United States*, 527 U.S. 173, 188 (1999) (quoting *Edenfield*, 507 U.S. at 770–71).

The Attorney General relies solely on the legislative history of Section 1748.1 to argue that "the California Legislature understood the economic dangers of credit card

surcharges to be real" and adopted Section 1748.1 to "eliminate that danger." But the Attorney General has pointed to no evidence that surcharges posed economic dangers that were in fact real before the enactment of Section 1748.1, or that Section 1748.1 actually alleviates these harms to a material degree. *See Edenfield*, 507 U.S. at 771–72 (noting that the record contained no studies or anecdotal evidence indicating that ban on solicitation by certified public accountants advanced Florida's asserted interests).

Indeed, Section 1748.1 does *not* promote the accuracy of information in plaintiffs' places of business. The law has the effect of allowing retailers to charge credit card users more for the same goods, but only if this price differential is expressed as a discount to cash users, rather than a surcharge for credit card users. But the higher cost is a result of credit card fees, and referring to the price differential as a discount prevents retailers from accurately conveying that causal relationship. In other words, Section 1748.1 prevents retailers like plaintiffs "from communicating with [their customers] in an effective and informative manner" about the cost of credit card usage and why credit card customers are charged more than cash users. *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 564 (2011). We fail to see how a law that keeps truthful price information from customers increases the accuracy of information in the marketplace. *Cf. id.* at 577 ("The First Amendment directs us to be especially skeptical of regulations that seek to keep people in the dark for what the government perceives to be their own good." (quoting *44 Liquormart*, 517 U.S. at 503)).

Even if there were evidence of consumer deception, or other harm to the free market, the statute's broad swath of exemptions would undermine any ameliorative effect. *See Rubin v. Coors Brewing Co.*, 514 U.S. 476, 489 (1995)

(noting that a law's "exemptions and inconsistencies" meant that the law "will fail to achieve" the asserted government interest). Section 1748.1 itself establishes that it "does not apply to charges for payment by credit card or debit card that are made by an electrical, gas, or water corporation and approved by the Public Utilities Commission." Cal. Civ. Code § 1748.1(f). The state has also broadly exempted itself and its municipalities from the coverage of Section 1748.1. *See* Cal. Gov. Code § 6159(h)(1) (allowing "a court or agent of the court, city, county, city and county, or any other public agency [to] impose a fee for the use of a credit or debit card"); Cal. Civ. Proc. Code § 1010.5 ("[A]ny court authorized to accept a credit card as payment pursuant to this section may add a surcharge to the amount of the transaction . . . ."); Cal. Food & Agric. Code § 31255(b) (permitting state animal-control officers to impose credit card surcharges). That California exempted itself and its subdivisions from the asserted free market protections of Section 1748.1 suggests that this justification is thin. *See Dana's R.R. Supply*, 807 F.3d at 1250 (noting that the many exemptions to Florida's surcharge ban "betray[] the frailty of any potential state interests"); *see also Valley Broad. Co. v. United States*, 107 F.3d 1328, 1334–36 (9th Cir. 1997) (striking down law under *Central Hudson* and noting that "numerous exceptions" to the law "undermine the government's purported interest"). The Attorney General offers no explanation why these exempt surcharges are any less harmful or deceptive than the surcharges plaintiffs seek to impose. Thus, enforcing Section 1748.1 against plaintiffs does not directly advance the state's interest in preventing consumer deception.

### c.   Section 1748.1 is more extensive than necessary

The final prong of the *Central Hudson* test asks "whether the speech restriction is not more extensive than necessary to serve the interests that support it." *Greater New Orleans Broad.*, 527 U.S. at 188.  California is not required to "employ the least restrictive means conceivable, but it must demonstrate narrow tailoring of the challenged regulation to the asserted interest," or, in other words, a reasonable fit.  *Id.* But when challenged laws have "numerous and obvious less-burdensome alternatives to the restriction on commercial speech," these alternatives will be a "relevant consideration in determining whether the 'fit' between ends and means is reasonable."  *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 417 n.13 (1993).

There is no reasonable fit between the broad scope of Section 1748.1—covering even plaintiffs' non-misleading speech—and the asserted state interest.  California has other, more narrowly tailored, means of preventing consumer deception.   For example, the state could simply ban deceptive or misleading surcharges.  *See Expressions I*, 975 F. Supp. 2d at 447.  Alternatively, California could require retailers to disclose their surcharges both before and at the point of sale, as Minnesota does.  *See* Minn. Stat. § 325G.051(1)(a) (allowing retailers to impose surcharges provided the "seller informs the purchaser of the surcharge both orally at the time of sale and by a sign conspicuously posted on the seller's premises").  California could also enforce its existing laws banning unfair business practices and misleading advertising in pricing.  *See* Cal. Bus. & Prof. Code §§ 17200, 17500.  These alternatives would restrict less speech and would more directly advance California's asserted interest in preventing consumer deception.

Given these more narrowly drawn alternatives, California cannot prevent plaintiffs from communicating credit card surcharges to their customers because of the potential for misleading information in other cases. *See In re R.M.J.*, 455 U.S. 191, 203 (1982) ("States may not place an absolute prohibition on certain types of potentially misleading information, . . . if the information also may be presented in a way that is not deceptive."). Section 1748.1, therefore, is more extensive than necessary.

In sum, Section 1748.1 restricts plaintiffs' non-misleading commercial speech. This restriction does not directly advance the Attorney General's asserted state interest in preventing consumer deception, nor is it narrowly drawn to achieving that interest. For these reasons, we agree with the district court that Section 1748.1 violates the First Amendment, but only as applied to plaintiffs.[7]

### III. CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's grant of summary judgment for plaintiffs on the First Amendment claim. Because a successful as-applied challenge invalidates only a particular application of the challenged law, *see supra* Part II.C.1, we **MODIFY** the district court's declaratory and injunctive relief to apply only to plaintiffs, and only with respect to the specific pricing practice that plaintiffs, by express declaration, seek to employ.

---

[7] Because plaintiffs' as-applied challenge is successful on First Amendment grounds, we need not reach their vagueness challenge to accord them the relief they seek. Moreover, counsel stated at oral argument that plaintiffs no longer press their vagueness challenge. We therefore do not reach the vagueness issue.