ACCEPTED
15-25-00086-Cv
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
1/8/2026 9:00 PM
CHRISTOPHER A. PRINE
CLERK

**No. 15-25-00086-CV**

# IN THE FIFTEENTH COURT OF APPEALS
# AUSTIN, TEXAS

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
1/8/2026 9:00:05 PM
CHRISTOPHER A. PRINE
Clerk

City of Grand Prairie, City of Aledo, City of Angleton, City of Aubrey, City of Bulverde, City of Clyde, City of College Station, City of Crandall, City of Denison, City of Denton, City of Edcouch, City of Elsa, City of Fate, City of Hutto, City of Kaufman, City of La Villa, City of Lockhart, City of McKinney, City of Navasota, City of Parker, City of Van Alstyne, and Aubrey Municipal Development District

*Appellants – Plaintiffs*

City of Brownsvile, City of Cibolo, City of Anna, and City of Bonham

*Appellants – Intervenor Plaintiffs*

v.

The State of Texas, Attorney General Kenneth Paxton, In His Official Capacity, Acting Texas Comptroller Of Public Accounts Kelly Hancock, In His Official Capacity, and the Office of the Texas Comproller of Public Accounts

*Appellees – Defendants*

# REPLY BRIEF OF CITY APPELLANTS

William Andrew Messer
State Bar No.13472230
andy@txmunicipallaw.com
Messer Fort, PLLC
6371 Preston Road, Ste 200
Frisco, Texas 75034
(972) 668-6400 (Phone)

Bradford E. Bullock
State Bar No. 00793423
brad@txmunicipallaw.com
Messer Fort, PLLC
4201 W. Parmer Ln., Ste C-150
Austin, Texas 78727
(512)930-1317 (Phone)

*Attorneys for City Appellants*

**ORAL ARGUMENT REQUESTED**

# TABLE OF CONTENTS

TABLE OF CONTENTS.............................................................................................ii

TABLE OF AUTHORITIES.....................................................................................iv

I. State Appellees intentionally mis-frame the Cities' pleaded injuries as a policy dispute, ignoring the Cities allegations demonstrating present legal and operational harm, loss of pledged taxes, and loss of vested contractual rights ............................... 1

    A. State Appellees waived their ability to challenge the existence of the Cities' pleaded jurisdictional facts because it failed to meet its *Miranda* evidentiary burden ................................... 3

    B. The Cities pleadings satisfy injury-in-fact — the pleaded injuries are not "hypothetical" because (according to State Appellees) SB 2038 operates "automatically" .................................... 5

    C. State Appellee's "not particular because all cities are affected" argument misunderstands standing and conflates breadth of injury with "particularized" injury ....................................... 9

    D. State Appellees overstate "third-party causation" to avoid acknowledging the Cities' particularized injuries .......................... 10

    E. The Cities satisfy injury-in-fact for multiple independent reasons ...................................................................................... 11

II. Traceability Exists Between The Cities' Claims And State Appellees.......................................................................................... 12

    A. State Appellees Judicial Admission Regarding The Attorney General Prosecutorial Indecision ................................... 13

    B. State Appellees Enforcement Policy Through The Attorney General ...................................................................................... 13

    C. The Attorney General's Prosecutorial Indecision Gives Standing to the Cities ....................................................................... 15

D.   The Cities Face Threat Of Enforcement From Third Parties ................................................................................ 21

E.   The State Comptroller Has Mandated Statutory Enforcement Powers............................................................ 23

III.  A declaration that 2038 is unconstitutional will redress the Cities' injuries..................................................................................... 26

IV.  The State Appellees'Appellees' facial plausibility and no immunity waiver arguments lack merit...................................... 27

V.   *Elliott* an HB 2512 do not moot the Cities' claims ................................. 29

A.   HB 2512 does not moot the Cities' *Nootsie*-forced implementation claims ................................................................ 29

B.   *Elliott* does not moot the Cities' claims ............................................ 31

PRAYER ............................................................................................................. 32

CERTIFICATE OF SERVICE.......................................................................... 33

CERTIFICATE OF COMPLIANCE ............................................................... 33

APPENDIX

# TABLE OF AUTHORITIES

**Cases**

*303 Creative LLC v. Elenis,*
 600 U.S. 570, 143 S.Ct. 2298, 216 L.Ed.2d 1131 (2023)..........................................21

*Alamo Heights Indep. Sch. Dist. v. Clark,*
 544 S.W.3d 755 (Tex. 2018).........................................................................3, 4

*Arizona v. Yellen,*
 34 F.4th 841 (9th Cir. 2022)..............................................................................18

*Babbitt V. United Foarm Workers Nat'l Union,*
 442 U.S. 289, 99 S. Ct. 2301, 60 L. Ed. 2d 895 (1979)......................................18

*Bland Indep. Sch. Dist. v. Blue,*
 34 S.W.3d 547 (Tex. 2000).........................................................................3, 4

*Brown v. Kemp,*
 86 F.4th 745 (7th Cir. 2023)..............................................................................22

*California v. Tex.,*
 593 U.S. 659, 141 S. Ct. 2104, 210 L. Ed. 2d 230 (2021)......................25, 26, 27, 28

*California Trucking Ass'n v. Bonita,*
 996 F.3d 644 (9th Cir. 2021).............................................................................19

*City of Austin v. Paxton,*
 943 F.3d 993 (5th Cir. 2019).....................................................................19, 20, 21

*City of El Paso v. Heinrich,*
 284 S.W.3d 366 (Tex. 2009)........................................................................... 24

*City of McLendon-Chisholm v. City of Heath,*
No. 05-23-00881-CV, 2024 WL 4824113, (Tex. App.—Dallas Nov. 19, 2024, no
pet.)..................................................................................................................passim

*Elliot v. City of Col. Station,*
717 S.W.3d 888 (Tex. 2025)..................................................................................passim

*FM Props. Operating Co. v. City of Austin,*
22 S.W.3d 868 (Tex.2000).............................................................................................5

*Franciscan Alliance Inc. v. Becerra,*
47 F.4th 368 (5th Cir. 2022)........................................................12, 16, 17, 18, 20

*General Servs. Com'n v. Little-Tex Insulation Co., Inc.,*
39 S.W.3d 591 (Tex. 2001).............................................................................................6

*Gray v. City of Valley Park, Mo.,*
567 F.3d 976 (8th Cir. 2009)........................................................................................19

*Harrington v. Cobb,*
185 S.W.2d 133 (Tex. Civ. App.—Dallas 1945), *affirmed,* 190 S.W.2d 709, 712
(1945)............................................................................................................................24, 25

*Italian Colors Rest. v. Becerra,*
878 F.3d 1165 (9th Cir. 2018)......................................................................................22

*Janek v. Harlingen Family Dentistry, P.C.,*
451 S.W.3d 97 (Tex. App.—Austin 2014, no pet.)....................................................24

*KVUE, Inc. v. Moore,*
709 F.2d 922 (5th Cir. 1983).........................................................................................17

*Langever v. Miller,*
124 Tex. 80, 76 S.W.2d 1025 (1934)...........................................................................26

*Love v. City of Dallas,*
40 S.W.2d 20 (Tex. 1931) ................................................................... 23, 25

*McKinney v. Blankenship,*
282 S.W.2d 691 (Tex. 1955) ............................................................... 24, 25

*Mission Consol. Indep. Sch. Dist. v. Garcia,*
372 S.W.3d 629 (Tex. 2012) ...................................................................... 4

*Morath v. Kingsville ISD,*
710 S.W.3d 918 (Tex.App. - 15 Dist. 2025, no pet) ........................... 28, 29

*National Ass'n for Gun Rights, Inc. v. Garland,*
741 F.Supp.3d 568 (N.D. Tex. 2024) ....................................... 16, 17, 20, 21

*Nat'l Press Photographers Ass'n v. McCraw,*
90 F.4th 770 (5th Cir. 2024) ................................................................... 17

*Nootsie, Ltd. v. Williamson Cty. Appraisal Dist.,*
925 S.W.2d 659 (Tex.1996) ............................................................... passim

*Ostrewich v. Tatum,*
72 F.4th 94 (5th Cir. 2023) ..................................................................... 17

*Pool v. City of Houston,*
978 F.3d 307 (5th Cir. 2020) ....................................................... 16, 17, 20

*Raj v. La. State Univ.,*
714 F.3d 322 (5th Cir. 2013) .................................................................. 20

*Sandwell v. City of San Marco,*
2025 WL 2108996 (S.D. Cal. 2025) ......................................................... 19

*Save Our Springs All., Inc. v. City of Dripping Springs,*
304 S.W.3d 871 (Tex. App.—Austin 2010, pet. denied) ............................. 5

*Speech First, Inc. v. Fenves,*
   979 F.3d 338 (5th Cir. 2020) ...................................................................... 16, 18, 20

*Spirit Aerosystems, Inc. v. Paxton,*
   142 F.4th 278 (5th Cir. 2025) ............................................................................... 18

*State v. City of Double Horn,*
   2019 WL 5582237 (Tex. App.—Austin 2019) ......................................................... 15

*State v. Epperson,*
   42 S.W.2d 228 (1931) ....................................................................................... 24, 25

*Susan B. Anthony List v. Driehaus,*
   573 U.S. 149, 134 S. Ct. 2334, 189 L.Ed.2d 246 (2014).............................. 17, 21, 22

*Tex. Dep't of Parks & Wildlife v. Miranda,*
   133 S.W.3d 217 (Tex. 2004).............................................................................. 4, 6, 12

*Texas v. KVUE-TV, Inc.*
   465 U.S. 1092 (1984)........................................................................................ 17, 18

*Toolpushers Supply Company v. IPR USA Corp.,*
   No. 3-10-CV-2195-B, 2012 WL 13028105 (N.D. Tex. Jan. 11, 2012) ................. 24

*Vermont Right to Life Committee, Inc. v. Sorrell,*
   221 F.3d 376 (2nd Cir.2000).................................................................................. 17

*Warth v. Seldin,*
   422 U.S. 490, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975)............................................ 9

*Whole Woman's Health v. Jackson,*
   6642 S.W.3d 569 (Tex. 2022). ............................................................................... 16

*Wooley v. Schaffer,*
   447 S.W.3d 71 (Tex. App.—Houston [14th Dist.] 2014, pet. denied).................. 4

*Zimmerman V. City of Austin,*
    881 F.3d 378 (5th Cir. 2018)..................................................................21

**Statutes**

Tex. Civ. Prac. & Rem. Code § 66.001 ....................................................15

Tex. Gov't Code § 43.014 .........................................................................12

Tex. Loc. Gov't Code § 41.001...........................................................8, 11

Tex. Loc. Gov't Code § 42.023 .................................................................30

Tex. Loc. Gov't Code § 42.101..................................................................30

Tex. Loc. Gov't Code § 42.102 ................................................................29

Tex. Loc. Gov't Code § 42.105 ................................................................30

Tex. Loc. Gov't Code § 42.152 .................................................................30

Tex. Loc. Gov't Code § 42.157 .................................................................29

Tex. Loc. Gov't Code § 375.001 ...............................................................23

Tex. Loc. Gov't Code § 377.101 ...............................................................23

Tex. Tax Code § 321.101 ...........................................................................23

Tex. Tax Code § 323.501 ...........................................................................23

Tex. Tax Code § 322.201 ...........................................................................25

Tex. Tax Code § 323.301 ....................................................................23, 24

Tex. Tax Code § 323.302 ...........................................................................23

Tex. Tax Code § 323.502 .................................................................23

Texas Health and Safety Code § 171.001 ........................................ 16

Texas Heartbeat Act, SB 8............................................................... 16

**Other Authorities**

Tex. Att'y Gen. Op. GA-1015 (2013).................................................24

Tex. Atty Gen. Op. MW-408 (1981)..................................................24

# REPLY BRIEF

**I.** **State Appellees intentionally mis-frame the Cities' pleaded injuries as a policy dispute, ignoring the Cities allegations demonstrating present legal and operational harm, loss of pledged taxes, and loss of vested contractual rights**

State Appellees' arguments ignore the Cities' legal authorities and pleaded facts, rather than refute them.

The Cities do not assert that their injury is the reduction (or elimination) of ETJ territory by a ***legislative act***. By mis-framing the Cities' challenge to SB 2038 as a mere policy disagreement, State Appellees create a strawman that it then easily bats down.

After mischaracterizing the Cities' alleged injury—mere loss of ETJ jurisdiction and authority—State Appellees then dismiss it as "hypothetical," claiming that the alleged injuries have not yet occurred because the Cities denied ETJ petitions. State Br. at 32–35. Even if that characterization of the Cities' alleged injuries were true (it is not), by later asserting that SB 2038 operates "automatically," State Appellees undermine the foundation upon which its strawman is built. State Br. at 57.

If SB 2038 operates "automatically" as State Appellees argue, the Cities' injuries are the actual or imminent consequence of an automatic petition process that puts legislative decision-making power in the hands of financially interested private landowners.

State Appellees also misstate or mischaracterize the legal grounds upon which the Cities' injuries rest. For example, State Appellees argue that the Cities assert *their own* due process rights to challenge SB 2038 under Article I of the Texas Constitution and then refute that position by arguing cities do not possess such Article I rights. State Br. at 35-36. But the Cities do not and never have claimed that they possess Article I rights. Rather, the Cities' claims are premised on an unconstitutional delegation of legislative authority under Texas Article III, from which the Cities' various injuries flow. SB 2038 is unconstitutional because it violates separation of powers, not because the Cities claim they have Article I rights.

When State Appellees are not mis-framing the Cities' injuries, they are affirmatively misstating the Cities' pleaded allegations. For example, they claim that the Cities pleaded "no" economic injuries similar to those in *McLendon-Chisholm* (State Br. at 34). *City of McLendon-Chisholm v. City of Heath*, No. 05-23-00881-CV, 2024 WL 4824113, at *4 (Tex. App.—Dallas Nov. 19, 2024, no pet.). But that is simply untrue. The Cities' allegations plainly allege a loss of pledged tax revenue and increased administrative costs, based not on speculative future events, but based upon a specific ETJ petition that removed tax generating property from AMMD's EJT (24CR6128, 6136), and the receipt of every other "automatic" ETJ petition, which occasions direct increased costs (injuries) (24CR6146-51).

State Appellees' criticism of the quality of the Cities' facts, which the trial court was obligated to accept as true, rings hollow because it chose to forego the opportunity to challenge the existence of the Cities' pleaded jurisdictional facts and the Cities' jurisdictional evidence. (36CR8624-52).

State Appellees' merits-based arguments should have been disregarded by the trial court, and this Court should rectify that error by reversing and remanding. When analyzed correctly, the Cities' allegations meet the injury-in-fact standard, as discussed more fully herein.

**A. State Appellees waived their ability to challenge the existence of the Cities' pleaded jurisdictional facts because it failed to meet its *Miranda* evidentiary burden.**

Standing is a prerequisite to subject-matter jurisdiction, which may be challenged by a jurisdictional plea. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 553-554 (Tex. 2000). State Appellees purport to challenge the quality and quantity of the Cities' factual allegations (State's Br. at 39-40); therefore, State Appellees were obligated to go beyond the pleadings and offer evidence conclusively rebutting the Cities' factual allegations, but they presented none (36CR8624-52). *See Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 770-771 (Tex. 2018) (jurisdictional plea challenging existence of jurisdictional facts should have supporting evidence).

This "summary judgment" burden shifting analysis is mandatory, and State Appellees' argument that the Cities produced "insufficient" evidence (States Br. p.

39-40) is nothing but an improper and premature attack on the merits of the Cities' claim. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 635 (Tex. 2012) (describing burden shifting analysis). The State's failure to present conclusively rebutting evidence precludes it from challenging the Cities' factual allegations under the *Miranda* burden-shifting standard. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 227 (Tex. 2004).

Because State Appellees presented no evidence in support of their jurisdictional plea, they did not meet their burden as defendants to raise a successful challenge to the existence of jurisdictional facts. *Clark*, 544 S.W. 3d at 771-72. Their choice to forego introducing evidence while arguing that the Cities jurisdictional evidence is insufficient must be regarded as nothing but an improper attempt to require the Cities to "put on their case simply to establish jurisdiction." *Miranda*, 133 S.W.3d at 228 (quoting *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000)).

Accordingly, State Appellees waived their ability to challenge the existence of jurisdictional facts, and the Cities' well-pleaded facts should be taken as true. *See Wooley v. Schaffer*, 447 S.W.3d 71, 76 (Tex. App.—Houston [14th Dist.] 2014, pet. denied) (comparing Texas Rule 91a with Federal Rule 12(b) motion to dismiss).

**B. The Cities pleadings satisfy injury-in-fact — the pleaded injuries are not "hypothetical" because (according to State Appellees) SB 2038 operates "automatically."**

State Appellees' "no injury-in-fact" argument rests almost entirely on a mischaracterization the elements of injury-in-fact, the Cities' factual allegations, and on contradictory and inconsistent arguments about how SB 2038 operates. *See* State Br. 32–39.

An injury is "hypothetical" when there is no actual or imminent invasion of a concrete and particularized legally protected interest. *Save Our Springs All., Inc. v. City of Dripping Springs,* 304 S.W.3d 871, 878 (Tex. App.—Austin 2010, pet. denied).

The Cities pleaded multiple legally protected interests recognized by the Texas Supreme Court and other courts for decades (24CR6123-86):

- The Cities may challenge SB 2038 because they have a legally protected interest in avoiding compelled enforcement of unconstitutional laws (private delegation of legislative authority);[1]

- The Cities may challenge SB 2038 because they have a legally protected interest in pledged tax revenue which has been lost by SB 2038's private delegation framework;[2]

---

[1] *Nootsie, Ltd. v. Williamson Cty. Appraisal Dist.,* 925 S.W.2d 659 (Tex.1996); *FM Props. Operating Co. v. City of Austin,* 22 S.W.3d 868 (Tex.2000).

[2] *City of McLendon-Chisholm v. City of Heath ("McLendon-Chisholm"),* No. 05-23-00881-CV, 2024 WL 4824113 (Tex.App.—Dallas Nov. 19, 2024, no pet.).

- The Cities may challenge SB 2038 because they have a legally protected interest in development agreement contracts that are no longer performable because of SB 2038's impairment of vested contractual rights (annexation by agreement);[3]

- The Cities may challenge SB 2038 because administrative and other costs associated with the implementation and enforcement of its mandate (revise ETJ boundaries, update official maps, adjust development administration, process petitions) are recognized "injuries".[4]

By contrast, State Appellees produced no evidence as part of their plea, and, therefore, could not have conclusively rebutted any of the Cities factual allegations. *Miranda,* 133 S.W. 3d at 227.

State Appellees also argue the Cities have suffered no injury because "the Cities have denied the petitions, [therefore] none of those alleged injuries have occurred." State Br. at 32–33. They argue that because the Cities denied the ETJ removal petitions, any loss of ETJ authority or related regulatory impacts are merely "hypothetical." *Id.* at 32–34.

But that assertion cannot be reconciled with the Cities' pleaded facts and State Appellees' interpretation of SB 2038 elsewhere in their brief.

---

[3] *See General Servs. Com'n v. Little-Tex Insulation Co., Inc.,* 39 S.W.3d 591, 599 (Tex. 2001).

[4] *McLendon-Chisholm,* No. 05-23-00881-CV, 2024 WL 4824113.

When addressing mootness[5] and the effect of *Elliott*, State Appellees insist that a city has *no* discretion to deny a statutorily compliant ETJ removal petition and that, if the city fails to release the area within the statutory timeframe, "release is effectuated as a matter of law." State Br. at 61–62. State Appellees emphasize that under *Elliott*, release is "automatic" when statutory conditions are met, regardless of a city's purported denial. *See Elliot v. City of Col. Station*, 717 S.W. 3d 888, 901, (Tex. 2025) ("Release is a matter of paperwork, not permission.").

These irreconcilable arguments disprove State Appellees' contention that the Cities' pleaded injuries are merely "hypothetical" because:

- State Appellees cannot convincingly argue "no injury" because petitions were denied, while simultaneously arguing that denials do not matter and that release occurs automatically. If a city's attempted petition denial is a legal nullity and release occurs by operation of law, then the governmental and contractual injuries alleged by the Cities cannot be hypothetical—they occur by operation of SB 2038's delegatory framework.

- Taking State Appellees' "operation of law" argument at face value, *Elliott* acknowledges that Cities must perform the "paperwork" related to administering SB 2038. *See Elliott* at S.W. 3d at 901. The Cities

---

[5] The Cities will separately address why *Elliott* and HB 2512 do not moot their claims.

allege this mandatory "paperwork" forces them to administer an unconstitutional ETJ release regime, lose pledged tax revenue, and contractual rights, and incur direct costs each time a private party submits a statutorily compliant petition. The Cities injuries cannot be a remote, speculative future possibility. Such injuries (e.g., require revisions to official maps under Local Government Code § 41.001(c) (Appx A), along with associated GIS, cartographic, and staff work— each of which entails real financial cost) are a legal certainty if SB 2038 is an unconstitutional delegation of legislative authority as the Cities claim.

- Because of SB 2038's mandatory operation, the Cities' injuries are the predictable consequence of acts expressly authorized by SB 2038, which necessarily cause present, ongoing governmental and contractual injuries to the Cities each time a statutorily compliant removal petition is received.

State Appellees' claim that the Cities pleaded "no economic injuries" depends on ignoring the Cities' compliance-cost allegations entirely. If SB 2038 operates automatically, State Appellees' "hypothetical injury" argument fails, and the Cities respectfully ask this Court to reject it.

**C. State Appellees' "not particular because all cities are affected" argument misunderstands standing and conflates breadth of injury with "particularized" injury.**

Implicitly acknowledging that the Cities suffer economic injuries, State Appellees argue that even if the Cities do face mandatory "paperwork" and financial impacts, those harms are not "particular" because "[e]very municipality in Texas that has an ETJ will have those same mandatory compliance duties and financial impacts." State Br. at 35–36.

That argument confuses breadth with lack of particularization, an argument the Supreme Court expressly rejects. *Warth v. Seldin*, 422 U.S. 490, 501, 95 S. Ct. 2197, 2206, 45 L. Ed. 2d 343 (1975) (plaintiff must allege a distinct/palpable injury to himself, even if injury shared by larger class of possible litigants). The Cities meet this standard—though there are a large number of cities in Texas, they are particularly affected each time one receives a removal petition. They all must bear the "paperwork" costs described *infra*, and some suffer additional particularized injuries (e.g., removal petitions related to land that was subject to a statutorily-backed development agreement, and in the case of AMDD, land subject to pledged taxes the AMDD would receive). *Id.*; *Elliott*, S.W. 3d at 901.

These injuries are particular to each city that receives an ETJ petition initiated by a private landowner, even if numerous cities suffer similar injuries under the same statute.

State Appellees cite no authority holding that an injury ceases to be "particular" simply because it is widespread. Accordingly, their "no particularity" argument fails and the Cities respectfully ask this Court to reject it.

### D. State Appellees overstate "third-party causation" to avoid acknowledging the Cities' particularized injuries.

State Appellees repeatedly assert that any alleged injury depends on "the acts of independent third-party landowners" and is therefore speculative. State Br. at 33–34, 38–39. And insofar as it relates to ETJ removals subject to existing development agreements, they also assert that, "The parties who chose to file petitions to release their property from the ETJ are the ones who breached their contracts with the Contract Cities." State Br. at 38.

That contradicts State Appellees' argument that once SB 2038's statutory predicates are met, release is mandatory and automatic, and denial is legally ineffective. State Br. at 61–62. SB 2038's automatic operation means the Cities' injuries flow from the statute's design, not from discretionary choices by landowners. The fact that these injuries are triggered by private landowners is not a bug—it is the predominant feature of SB 2038.

For injury-in-fact purposes, the relevant point is that SB 2038 mandates a release regime, and forces cities to administer that regime. Passing the buck to private parties does not change the triggering mechanism of the injury—SB 2038's delegation mechanism. That is sufficient to establish concrete and imminent injury

even if third-party landowners are the triggering mechanism because without SB 2038's delegation of authority, private landowners could no more "abolish" ETJs than cities can mandate their existence. *See Nootsie*, 925 S.W.2d at 661-62.

**E. The Cities satisfy injury-in-fact for multiple independent reasons.**

Texas courts recognize injury where political subdivisions are charged with implementing allegedly unconstitutional statutes. The Cities grounded this principle in Texas Supreme Court precedent in *Nootsie, Proctor,* and *Neeley.* Cities' Br. at 21–23, 25–26.

SB 2038 forces ongoing costly municipal action—map revisions, GIS updates, staff time, city engineer time, administrative processing, website design—each time the ETJ changes by submittal of a single 2038 petition. Cities' Br. at 10–18. Those are concrete municipal expenditures. These expenditures are mandated by statute, Local Government Code § 41.001. *See* Appx A. And these expenditures are sufficient to establish injury in fact.

The Cities specifically pleaded that AMDD will lose local sales and tax revenue by virtue of an ETJ release petition affecting a specific parcel that would otherwise be subject to such taxes (24CR6128, 6136). *See McLendon-Chisholm* at *4. State Appellees raised a merits-based argument, complaining that the Cities did not include expert reports as part of its pleading. State Br. at 39-40.[6] That *ipse dixit* is

---

[6] The improper merits-based nature of State Appellees' argument is apparent—"AMDD has not suffered an injury in fact." State Br. at 40. The proper analysis at this jurisdictional stage is

insufficient—State Appellees did not meet *their Miranda* summary judgment burden and disprove the existence of pleaded jurisdictional facts and evidence.

State Appellees argue that since cities have no "vested rights" against the state to retain ETJ (State Br. at 37), the Cities have no legally protected interest that supports their impairment of contract claims. This argument is another strawman. SB 2038 provides a legislatively created mechanism for parties to development agreements to remove their property from a city's ETJ—a legal prerequisite for a city to enter a development agreement and ultimately annex the property in question. Tex. Gov't Code § 43.014. Once a property is out of a city's ETJ, the legal basis for a Chapter 212 development agreement expires. Thus, SB 2038 constitutes an unconstitutional impairment on existing contracts.

These allegations and the Cities' jurisdictional evidence in support of these pleadings plainly meet the injury-in-fact threshold (24CR6123-86; 21CR4761-5446; 22CR5449-5895; 23CR5897-6120).

## II. Traceability Exists Between The Cities' Claims And the State Appellees.

The Fifth Circuit has recently and repeatedly held that plaintiffs have Article III standing when faced with *prosecutorial indecision*. *E.g., Franciscan Alliance Inc. v. Becerra*, 47 F.4th 368, 376-377 (5th Cir. 2022) (prosecutorial indecision, and

---

whether the Cities adequately pleaded facts that constitute an injury-in-fact. They did. *See McLendon-Chisholm* at *4.

thus standing, found when government had not determined its position on enforceability and when the government vaguely promised not to enforce policies).

## A. State Appellees Judicial Admission Regarding The Attorney General Prosecutorial Indecision.

State Appellees' amended plea to the jurisdiction *admits* that the Attorney General "has not disavowed *ever* enforcing SB 2038", and this failure to disavow "shows nothing about whether the State or Attorney General will *imminently* do so against the Cities." CR 8634 (emphasis added). The State's argument attempts to show a lack of imminence but misses the point of prosecutorial indecision. 24CR6149-51). State Appellees' admission in its live pleading that is has not disavowed ever enforcing SB 2038 against the Cities easily meets the "prosecutorial indecision" standard necessary for the Cities to establish Article III standing.

## B. State Appellees Enforcement Policy Through The Attorney General

There is no question that the Attorney General's office has a clear enforcement policy targeting cities that it believes do not follow state law. The Attorney General has issued press releases that establish a credible threat of prosecution *against cities* that challenge laws they find unconstitutional. Says the Attorney General:

It's quite simple: the legislature passes every law after a full debate on the issue, and we don't allow cities the ability to create anarchy by picking and choosing the laws they enforce.[7]

My office will take all necessary legal actions to ensure compliance with state law and hold accountable any local entity that defies its legal obligations.[8]

Local governments must abide by the law, and I will take every step to defend the people of Texas[.][9]

–and–

I'm launching this review to ensure that the law is universally followed, taxpayers are respected, and local government is accountable to all Texans.[10]

The Texas Attorney General has demonstrated a willingness to enforce, and has actually enforced, such claims against Texas municipalities. *See State of Texas v. City of Dallas, et al* (all city councilmembers), No. DC-24-20503, 134th Dist. Court, Dallas County, Texas (*ultra vires* claim against councilmembers for violating the

---

[7] *See* press release on January 31, 2024, which may be found on the Attorney General's website. https://www.texasattorneygeneral.gov/news/releases/attorney-general-ken-paxton-sues-five-cities-over-marijuana-policies-preventing-enforcement-texas.

[8] *See* press release on March 13, 2025, which may be found on the Attorney General's website https://www.texasattorneygeneral.gov/news/releases/attorney-general-ken-paxton-announces-investigation-dallas-open-borders-sanctuary-city-policies

[9] *See* press release on December 9, 2025, which may be found on the Attorney General's website. https://www.texasattorneygeneral.gov/ news/releases/attorney-general-ken-paxton-orders-texas-cities-halt-potentially-illegal-property-tax-increases

[10] *See* https://www.texasattorneygeneral.gov/news/releases/attorney-general-ken-paxton-launches-statewide-investigation-nearly-1000-texas-cities-ensure

law). He publicly proclaims that one of his priorities is to enforce the law against cities, even where the law is constitutionally infirm.

State Appellees acknowledges in their pleadings that the Attorney General has the authority to file *ultra vires* suits against city officials, and that *ultra vires* suits are "a way to reassert the State's control over its municipalities… ." CR 8634. The State can also file *quo warranto* suits against municipalities and their officials. Tex. Civ. Prac. & Rem. Code § 66.001–.003. For example, the State sued the town of Double Horn and its city councilmembers asserting a *quo warranto* claim. *See State v. City of Double Horn,* 2019 WL 5582237 (Tex. App.—Austin 2019, pet. denied). In its appellate briefing in that case, the Attorney General stated its policy against municipalities: "For centuries, quo warranto has protected the people from municipal overreach."; "In Texas, the State has long used quo warranto to challenge …usurpations of power by city officials."; and "The State commonly uses quo warranto against municipalities." *See* No. 03-19-00304-CV, State brief at 3.

## C. The Attorney General's Prosecutorial Indecision Gives Standing to the Cities.

Throughout this lawsuit, the Attorney General has repeatedly refused to disavow prosecuting the Cities for violating SB 2038, and instead, attempted to

assuage concerns by basically stating there are no current plans to prosecute.[11] That is precisely the type of position that provides standing to the Cities.

In *Franciscan Alliance*, the U.S. Department of Health and Human Services in its appellate brief said it *"has not to date evaluated"* whether it will seek an enforcement lawsuit. 47 F.4th at 376 (emphasis added). The Fifth Circuit found that statement dispositive of standing, equating it to "conceding that it may" file an enforcement action. *Id.* [12]  In *Pool v. City of Houston*, when the "City … indicated *that it had not yet determined its position* on the Charter requirements' enforceability," the Fifth Circuit held that the plaintiffs had standing to bring an "immediate ⎡⎤ challenge." 978 F.3d 307, 310 (5th Cir. 2020) (emphasis added). In *Speech*, when the defendant "*vaguely promised to not enforce the challenged policies*, the Fifth Circuit held that the plaintiffs had standing because the defendant's position was "so vague… ." 979 F.3d at 338 & n.40 (emphasis added). In *National Ass'n of Gun Rights, Inc. v. Garland*, 741 F.Supp.3d 568 (N.D. Tex. 2024), the U. S. Attorney and other federal government defendants challenged the standing of the plaintiffs, arguing there was no credible threat of prosecution. *Id.*

---

[11] Nothing in SB 2038 prevents the Attorney General from bringing suit against the Cities to enforce its terms. *Compare* SB 2038 with the Texas Heartbeat Act, SB 8, Texas Health and Safety Code § 171.001 et seq., which forbids the State and its officers from enforcing the Texas abortion ban through civil enforcement action. *Whole Woman's Health v. Jackson*, 642 S.W.3d 569, 575 (Tex. 2022).

[12] The State acknowledges, as it must, that Texas uses the federal law of Article III standing as precedent. State Br. at 30.

at 586 (emphasis added). In that case, the government defendants "repeatedly refused to disavow prosecuting the [plaintiffs]." *Id.* at 586. The court found the plaintiffs had standing because the plaintiffs faced an implicit threat, the government defendants stood with "lingering silence" and "***could change their current plans at any time by deciding to prosecute***." *Id.* at 586 (emphasis added). The court found the plaintiffs had standing because a "credible specter of enforcement hangs in the balance." *Id.* at 588;[13] *see also KVUE, Inc. v. Moore,* 709 F.2d 922, 930 (5th Cir. 1983) (plaintiffs had standing in part because "the state has not disavowed enforcement."), aff'd sub nom. *Texas v. KVUE-TV, Inc.* 465 U.S. 1092 (1984); *Vermont Right to Life Committee, Inc. v. Sorrell,* 221 F.3d 376, 383 (2nd Cir.2000) (noting state retained option to sue and not bound by estoppel from pursuing enforcement in future).

State Appellees cite just two cases, *Ostrewich v. Tatum,* 72 F.4th 94, 101 (5th Cir. 2023) and *Nat'l Press Photographers Ass'n v. McCraw,* 90 F.4th 770, 786 (5th Cir. 2024), to argue against the established prosecutorial indecision precedent. State

---

[13] If there is any doubt that the Attorney General in this case has not fully disavowed enforcement, this Court can request supplemental briefing on this very issue. *See National Ass'n for Gun Rights,* 741 F.Supp.3d at 587 & n.46.

And in *Franciscan Alliance,* during oral argument the State pointedly refused to disavow enforcement. *See* Oral Arg. At 15:46-19:27, https://perma.cc/Z82R-F7AY ([Q.] Are you able to tell us that … you're not going to enforce? [A.]: "No, your honor."). The Court found standing for prosecutorial indecision in that case. 47 F.4th at 376. The same refusal of disavowment occurred in oral argument in *Susan B. Anthony List v. Driehaus,* 573 U.S. at 165 (Court found standing in part because the government did not disavow future enforcement, citing Tr. Of Oral Arg. 29-30).

Appellees' argument is flawed. Those two cases are not *standing* cases addressing Article III standing at all. Rather, they address *Ex parte Young* waivers of Eleventh Amendment immunity. The cases are easily distinguishable.

Earlier this year, the Texas Attorney General argued lack of standing when a plaintiff challenged the constitutionality of a statute. In *Spirit Aerosystems Inc.*, the Fifth Circuit again addressed the doctrine of standing when there was prosecutorial indecision by the Texas Attorney General. Said the Fifth Circuit:

> Our court has recognized that where a governmental authority 'concedes that it may' enforce a particular provision, 'plaintiffs have standing in the face of … prosecutorial indecision.' *This is the classic case of prosecutorial indecision*.

*Spirit Aerosystems*, 142 F.4th 278, 285 (5th Cir. 2025) (emphasis added) (internal citation omitted).

In the face of prosecutorial indecision by the State Appellees, and particularly the Attorney General, the Court should apply straightforward precedent and find the Cities have standing, just as standing was found in *KVUE-TV* (1984), *Pool* (2020), *Speech First* (2020), *Franciscan Alliance* (2022), and *Spirit Aerosystems* (2025). Though State Appellees do not seem to acknowledge this legal principle, the Fifth Circuit has "repeatedly held that plaintiffs have standing in the face of similar prosecutorial indecision." *Franciscan Alliance*, 47 F.4th at 376 & n.40; *see also Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 302, 99 S. Ct. 2301, 2311, 60 L. Ed. 2d 895 (1979) (refusal to disavow prosecution constitutes indecision); *Arizona*

*v. Yellen*, 34 F.4th 841, 850 (9th Cir. 2022) (same); *Sandwell v. Cit of San Marco*, 2025 WL 2108996, *5 (S.D. Cal. 2025) citing *California Trucking Ass'n v. Bonita*, 996 F.3d 644, 653 (9th Cir. 2021) (same); *Gray v. City of Valley Park, Mo.*, 567 F.3d 976, 985-86 (8th Cir. 2009) (same).

State Appellees should not be able to use prosecutorial indecision as a shield to gain a litigation advantage against the Cities to obtain dismissal of suit, and then the next day, still be able to file suit against the Cities and their officials for claims of *ultra vires* or *quo warranto*. On a policy level, it would be fundamentally unfair to allow the Attorney General to use his office as both a shield and a sword.

State Appellees rely on *City of Austin v. Paxton*, 943 F.3d 993 (5th Cir. 2019), to address the Attorney General enforcement policy against cities in other cases to deny Article III standing. *See* State Br. at 47-48. *Austin* is distinguishable in many respects.

First, that was a case where the city of Austin sued the Attorney General and Texas Workforce Commission alleging federal preemption of a state statute that affected an Austin ordinance. The case dealt extensively with whether the Attorney General and Workforce Commission have 11th Amendment immunity or are subject to the *Ex parte Young* exception to immunity. The present case has nothing to do with 11th Amendment immunity or *Ex parte Young* standing. State Appellees have neither specifically pled nor argued for 11th Amendment immunity.

*Austin* is distinguishable for a second reason. The *Young* exception to immunity is considered a legal fiction that allows private parties to bring suits against state officials for violating federal law. *City of Austin*, 943 F.3d at 997, citing *Raj v. La. State Univ.*, 714 F.3d 322, 328 (5th Cir. 2013). In this case, there is no claim that State Appellees have violated federal law.

The *Austin* opinion did analyze whether the *Young* 11th Amendment immunity exception applied to the Attorney General because there was some connection with the enforcement of the challenged law. 943 F.3d at 999-1003. At that time, in 2019, the Fifth Circuit panel recognized that "[w]hat constitutes a sufficient 'connection to [] enforcement' is not clear from our jurisprudence." at 999. Since then, the Fifth Circuit has repeatedly held that plaintiffs have standing when faced with prosecutorial indecision as is occurring in this case. *See, e.g., Franciscan Alliance*, 47 F.4th at 376 & n.40, *Pool v. City of Houston*, 978 F.3d at 310 (5th Cir. 2020), *Speech First*, 979 F.3d at 338 & n. 40; *National Association of Gun Rights*, 741 F.Supp.3d 568. *Austin* is legally inapposite to this case.

Additionally, the *Austin* court found that the city of Austin faced no legal consequences if it attempted to enforce its own ordinance, *id.* at 1002, and that the city did not show a significant possibility of future harm. *Id.* at 1003. But in this case, the Cities have demonstrated that they have and will certainly suffer harm.

Further, *Austin* is factually distinguishable. *Id.* Unlike *Austin*, this case does not involve whether a city may enact and enforce its own ordinances, which may be preempted by state law. Rather, this case involves a state-created ETJ release scheme instituted by private individuals. State Br. at 33. These facts are more similar to "pre-enforcement challenges, which require a showing of "an intent to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by statute, … as well as a credible threat of prosecution." *Nat'l Ass'n for Gun Rights, Inc. v. Garland*, No. 4:23-CV-00830-O, 2023 WL 5610293, at *4 (N.D. Tex. Aug. 30, 2023) (citing *Zimmerman v. City of Austin*, 881 F.3d 378, 391 (5th Cir. 2018)).

**D. The Cities Face Threat Of Enforcement From Third Parties.**

The U.S. Supreme Court in *Susan B. Anthony List* found Article III standing in part because the threat of a lawsuit is not limited to the government or prosecutor. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 164 (2014). "Because the universe of potential complainants is not restricted to state officials who are constrained by explicit guidelines of ethical obligation, there is a real risk of complaints from [third parties]." *Id.*; *see also 303 Creative LLC v. Elenis*, 600 U.S. 570, 583, (2023) (credible threat of enforcement existed where "anyone in the State [could] file a complaint against [plaintiff] and initiate 'a potentially burdensome administrative hearing' process.").

Here, the Cities' standing is bolstered by the undeniable fact that *any* property owner in the Cities' ETJ has the right to enforce SB 2038 against the Cities. This is evidenced in this very case. The City of Denton was sued by developer Long Tale for denying Long Tale's 2038 petition. Denton was sued in district court in Denton County, styled: *2020 Long Tail Trail Investments, LLC v. City of Denton et al*, No. 24-0075-431 (431st District), which was abated so that Long Tale could intervene to assert its declaratory judgment claims against Denton in this case. That occurred.[14] These facts demonstrate the Cities possess standing. *See Susan B. Anthony List*, 573 U.S. at 164; *Brown v. Kemp*, 86 F.4th 745, 768 (7th Cir. 2023) (party had standing because government authorities were not the only ones who could seek to enforce a law); *Italian Colors Rest. v. Becerra*, 878 F.3d 1165, 1173 (9th Cir. 2018) (party had standing because "even if the Attorney General would not enforce the law," private citizens had a right of action).

---

[14] As of September 13, 2023, Denton had five 2038 petitions submitted. 24CR6067. As of today, Denton has 24 removal petitions. Cities ask the Court to take judicial notice that as of December 15, 2023, the City of Austin (not a party) had 191 petitions for release, with 74 released by operation of SB 2038. https://services.austintexas.gov/edims/document.cfm?id=420864 The Cities also ask the Court to take judicial notice that in 2024, upon the request of various owners, various parcels were added back to the ETJ, with one resident quoted as follows:

> "Susan Harris told Council her 7-acre property was included in a request for disannexation "*without notice to us, without our consent, and entirely against our wishes*. And after a steep learning curve and much strategizing, we decided that under Senate Bill 2038, which is the bill that's harming us in this case, we would use that to protect ourselves. And we petitioned the city to release our property voluntarily from the ETJ," so they could come back and ask to rejoin the ETJ." https://austinmonitor.com/stories/2025/01/at-citizens-request-city-council-reannexes-land/

Given that State Appellees have steadfastly refused to promise, in any way, they will not seek enforcement against the Cities, the Cities have standing to challenge the constitutionality of SB 2038 under firmly established precedent. Credible threats of enforcement continue to loom over the Cities.

**E. The State Comptroller Has Mandated Statutory Enforcement Powers**

The AMDD is a Texas municipal management district with undisputed authority by statute to impose and receive local sales and use taxes approved at an election. Tex. Tax Code § 321.101 (municipalities); Tex. Loc. Gov't Code § 377.101, 375.001 et seq. (municipal management districts). Although such local jurisdictions impose local sales and use taxes, the Comptroller is responsible for administering, collecting, and enforcing the taxes imposed by the ADD. Tex. Tax Code §§ 323.301, 323.502. Retailers report and remit sales tax collected to the Comptroller, *see, e.g., id.* §§ 323.201, 323.502, 323.302, and then, it is the Comptroller's statutory duty to disburse the sales tax to the local taxing authority, AMDD. *See id.*, §§ 323.502, 323.302. The State does not own the sales taxes; rather, the Comptroller holds them in trust for the benefit and use of the local taxing authority. *See Love v. City of Dallas*, 40 S.W.2d 20, 29 (Tex. 1931). AMDD has a vested right to the tax revenues collected by the Comptroller. *Id.*; *see* Tex. Tax Code § 323.501 et seq. (Comptroller required to maintain sales tax revenue in trust in a separate suspense account of the municipality and is required to disburse the revenue at least twice annually).

The Texas Tax Code states, "The comptroller **shall administer**, **collect**, and **enforce** the sales and use tax of a taxing entity." Tex. Tax Code § 322.301 (emphasis added). *See also* Tex. Att'y Gen. Op. GA-1015 (2013) (recognizing the Comptroller's role in overseeing the administration of municipal and county sales tax); *Toolpushers Supply Company v. IPR USA Corp.*, 2012 WL 13028105, at \*3 (N.D. Texas Sept. 11, 2012) (same). Under the plain language of § 323.301, the Comptroller is the **sole** enforcement authority and has **no discretion** regarding the tax payments he must collect and remit to the AMDD (or any taxing entity). Tex. Atty Gen. Op. MW-408 (1981) (comptroller is the sole administrator and collector of local sales tax).

The Comptroller, like every state official, is not permitted to disregard a ministerial duty imposed on him by law. *City of El Paso v. Heinrich*, 284 S.W.3d 366, 372 (Tex. 2009) (no immunity for *ultra vires* acts); *Harrington v. Cobb*, 185 S.W.2d 133, 139 (Tex. Civ. App.—Dallas 1945), *affirmed*, 190 S.W.2d 709, 712 (1945) (addressing ministerial duties); *McKinney v. Blankenship*, 282 S.W.2d 691, 694 (Tex. 1955) (same). If the Comptroller fails in that ministerial duty, he is subject to an *ultra vires* action. *Heinrich*, 284 S.W.3d at 374. Payment of monies owed is "purely ministerial" under certain circumstances. *State v. Epperson*, 42 S.W.2d 228, 231 (1931) (holding duty to make payments owed to persons who are entitled to receive money under valid contracts is purely ministerial); *see also*

*Dentistry, P.C.*, 451 S.W.3d 97, 104 (Tex. App.—Austin 2014, no pet.) (addressing ministerial duty to remit tax (Medicaid) payments).[15]

AMDD plainly faces a credible threat that the Comptroller will enforce the unconstitutional SB 2038 because that is the Comptroller's undisputed ministerial duty pursuant to and withhold AMDD's pledged tax revenue the Comptroller would have otherwise had an undisputed ministerial duty pursuant to § 322.201(a) to disburse. The Comptroller is in the cross-hairs of this statutory, constitutional dilemma. The standing elements regarding the Comptroller have been established by the AMDD: (1) it has or will imminently suffer an injury-in-fact from perpetual lost sales tax revenues and (2) this loss is fairly traceable to the Comptroller, who is the state official solely responsible for sales tax administration, collection and enforcement, and (3) AMDD's injury would be redressed by invalidating SB 2038. *Harrington v. Cobb*, 185 S.W.2d 133,139 (Tex. Civ. App.—Dallas 1945), *affirmed*, 190 S.W.2d 709, 712 (1945) (State Comptroller properly sued for declaratory judgment involving payment of occupation taxes)

---

[15] State Appellees assert that the Cities claim that "the Comptroller is somehow enforcing SB 2038 by not remitting sales and use taxes … related to a property that has been removed from the municipality's ETJ" is a "leap too far." *See* State Brief at 51. State Appellees fail to recognize the Comptroller's statutory legal duty. Their view of the Comptroller's enforcement authority is severely myopic, focusing only on the terms of SB 2038 while ignoring the statutes in the Tax Code that proscribe the Comptroller's mandatory legal duties. Notably too, their brief does not mention, much less distinguish, the Supreme Court cases of *Love v. City of Dallas, Harrington v. Cobb, McKinney v. Blankenship,* and *State v. Epperson,* which all involve the Comptroller and/ or tax collection. State Appellees' silence is telling.

## III. A declaration that 2038 is unconstitutional will redress the Cities' injuries.

The Cities have alleged that SB 2038 causes them to suffer various well-recognized injuries (i.e., implementation of unconstitutional law[16]; unconstitutionally impaired contract rights[17]; loss of pledged tax revenue[18]; costs associated with implementation[19]) that are fairly traceable to the implementation of SB 2038[20]. Indeed, State Appellees essentially concede that the Cities suffer injuries traceable to SB 2038 by admitting that parties to development agreements breach when they remove their property from ETJs[21]—they just argue that the injuries are caused by the private third parties, not by operation of SB 2038. But that is wrong.

Having conveniently pointed the finger of blame at private third parties who can only "breach" development agreements by virtue of SB 2038, State Appellees sidestep redressability, arguing that because the named defendants do not "enforce" SB 2038, the Cities injuries cannot be redressed.[22] But that misses the redressability

---

[16] *See Nootsie* 925 S.W.2d at 662.

[17] *Langever v. Miller*, 124 Tex. 80, 76 S.W.2d 1025, 1032 (1934) ("Any impairment" of contract obligation is within constitutional prohibition; degree of impairment is immaterial).

[18] *See McLendon-Chisholm* at *4.

[19] *California v. Tex.*, 593 U.S. 659, 692, 141 S. Ct. 2104, 2127, 210 L. Ed. 2d 230 (2021) ("pocketbook" injuries, even nominal ones, constitutes injury in fact).

[20] *See Elliott* S.W.3d at 895-96 (ETJ release is the only action a city is authorized to take upon receipt of a valid petition).

[21] *See* State Br. at 38.

[22] *See* State Br. at 38.

mark when the harm complained of is implementation of an unconstitutional statute.

Like the states in *California v. Texas*, the Cities here have alleged financial injuries caused by implementing an unconstitutional statute. 593 U.S. at 692. The question is whether these injuries would be redressed by a favorable judgment declaring SB 2038 unconstitutional, thereby rendering the third-party actions taken pursuant to it legal nullities. The Supreme Court tells us the answer is unquestionably yes. *Id.* (declaration of unenforceability of a law redresses the injury of implementation).

As the Supreme Court observed, "when a party is 'an object of the action … at issue,' 'there is ordinarily little question that the action … has caused [that party] injury'—i.e., that the injury is traceable to that action—'and that *a judgment preventing … the action will redress it.*'" *Id.* at 694 (emphasis added). The Cities are the object of SB 2038 and declaring it an unconstitutional delegation of legislative authority will redress the continued injuries Cities sustain by implementing it. *Id.* at 695 (finding it "obvious" that ending ongoing expenses associated with implementation of an unconstitutional law will redress the injury).

## IV. The State Appellees' facial plausibility and no immunity waiver arguments lack merit.

Only by creating a weak strawman argument that the Cities are asserting equal protection and due course claims on their own behalf are State Appellees able

to argue that the Cities' claims lack facial plausibility. As the Cities have repeatedly shown, *Nootsie* and its progeny stand for the proposition that local governments have standing to challenge and are injured by forced implementation of allegedly unconstitutional laws passed by the Legislature. The State's State Appellees' shell-game of passing laws purposely designed to avoid "enforcement connection" do not divest cities of the ability to challenge them when they allege, as the Cities did here, forced implementation and financial injuries.[23] *See California*, 593 U.S. at 692.

State Appellees' no immunity waiver argument (State Br. at 62) is barely worth addressing because it is built on an imaginary foundation. There is simply no question that the UDJA waives immunity for claims challenging the validity of a statute. Whether a particular plaintiff has standing and asserts a viable claim (the Cities contend they have demonstrated many times over), does not change the fact that the UDJA is the exact mechanism a party uses to challenge constitutionally infirm statutes. *See Morath v. Kingsville ISD*, 710 S.W.3d 918, 929 (Tex. App.—15 Dist. 2025, no pet.) (immunity is waived for declaratory judgment challenging validity of a statute).

---

[23] It is noteworthy remembering that the trial court compelled State Appellees to answer disclosures after the State refused to do so, and even after being compelled to answer, it refused to disclose potential parties (20CR4742-43). State Appellees play a shell game, hiding behind prosecutorial indecision and refusal to answer court-mandated discovery.

**V.** *Elliott* **and HB 2512 do not moot the Cities' claims.**

In enacting HB 2512, the Legislature implicitly acknowledged SB 2038 was constitutionally infirm in significant ways and validated that the Cities were right to assert claims that they were forced to implement a law that violated constitutional equal protection and due course of law. But State Appellees drastically oversell the legislative changes made by HB 2512 and in the process exposes the weakness of their mootness arguments.

**A. HB 2512 does not moot the Cities' *Nootsie*-forced implementation claims.**

HB 2512 does not sweep nearly so far as the State Appellees contend and fails to "fix" SB 2038's fundamental delegation and contract impairment flaws. For example, the "opt out" provision that allows affected landowners to remain in a city's ETJ *only* applies to ETJ releases by election, *not* petition. *See* Tex. Loc. Gov't Code Ann. § 42.157 (opt out only applies "under this subchapter"—Subchapter E – Release by Election). Subchapter D, which governs petitions filed by individual landowners, still permits "majority in value" owners to sweep up unwilling minority in value landowners in an ETJ removal and that Subchapter contains *no* "opt out" provision for minority value owners. *See* Tex. Loc. Gov't Code Ann. § 42.102(b).

Moreover, HB 2512's mandatory notice provision, which State Appellees claim moots the Cities' due course forced-implementation claims (State Br. at 59)

likewise *only* applies to Subchapter E (removal by election), *not* Subchapter D (removal by petition). *See* Tex. Loc. Gov't Code Ann. 42.152(d) ("If a municipality receives a petition *under this section* …").

The notice provision applicable to Subchapter D remains unchanged. See Tex. Loc. Gov't Code Ann. § 42.105(b). Affected property owners may or may not receive notice that their property is a minority value property, but even if they are provided such notice by a city, there is still no mechanism for them to "opt out," meaning there is no meaningful opportunity to be heard prior to ETJ removal.

Accordingly, the changes HB 2512 makes to Local Gov't Code Chapter 42 ETJ removal do not moot the Cities equal protection and due course *Nootsie*-forced implementation claims because Subchapter D, the common method of ETJ removal, remains unchanged in those respects. Accordingly, the Cities *Nootsie*-"forced implementation" claims premised on equal protection and due course protections belonging to affected landowners are not mooted. The only claim mooted by HB 2512 concerns the now-resolved conflict between the former Local Government Code § 42.023, which required municipal consent to reduce ETJ. As of September 1, 2025, that has been legislatively mooted by HB 2512.

But what HB 2512 does not do is fundamentally alter the ETJ removal authority delegated to private individuals. SB 2038 (more specifically Tex. Loc. Gov't Code, Ch. 42, Subchapter D, §§ 42.101-105) still suffer the same constitutional infirmities they always have since adoption.

**B. *Elliott* does not moot the Cities' claims.**

Contrary to the State Appellees' argument, the Texas Supreme Court **did not rule on the constitutionality of SB 2038** in *Elliott.* Instead, it **expressly declines** to do so under the doctrine of constitutional avoidance. *Elliott,* 717 S.W.3d at 900. The Court directly states that the City's challenge to SB 2038 does not justify a constitutional ruling in that case:

> Nor does the City's resistance to SB 2038 authorize this Court to pass judgment on the constitutionality of an ETJ regime that lacks a unilateral opt-out option … .

*Id.* at 896-97. The Court explicitly grounds its refusal to decide the constitutional issues in this case based on the doctrine of constitutional avoidance. *Id.* at 895. imprudent. *Id.*

Finally, the Court acknowledges that SB 2038's constitutionality is being litigated elsewhere—and is not decided in this case. *Id.* Rather than passing on the merits of SB 2038's constitutionality, the Court is simply restating the legal truism that all legislative enactments enjoy a presumption of constitutionality. *Id.* Additionally, an order of vacatur and abatement is incompatible with a ruling on constitutionality because it removes the lower court opinion's precedential value. *Id. Elliott* did not rule on SB 2038's constitutionality and does not moot the Cities' claims.

## PRAYER

The Court should reverse the district court's order and remand the case for consideration of the Cities claims that SB 2038 is constitutionally infirm.

Respectfully submitted,

*/s/ Wm. Andrew Messer*
Wm. Andrew Messer
State Bar No. 13472230
andy@txmunicipallaw.com
Messer Fort, PLLC
6371 Preston Road, Suite 200
Frisco, Texas 75034
972.668.6400 – Telephone


Bradford E. Bullock
State Bar No. 00793423
brad@txmunicipallaw.com
Messer Fort, PLLC
4201 Parmer Lane, Suite C150
Austin, Texas 78727-4168
512.930.1317 – Telephone

**ATTORNEYS FOR
CITY APPELLANTS**

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing instrument has been sent via electronic service to all attorneys of record, in compliance with Rule 6.3 of the Texas Rules of Appellate Procedure, on January 8, 2026.

*/s/Wm. Andrew Messer*
Wm. Andrew Messer

## CERTIFICATE OF COMPLIANCE

This is to certify that, according to the Microsoft Word computer program used to prepare this document, the document contains 7389 words, which is in compliance with Texas Rule of Appellate Procedure 9.4(i)(3), excluding those items that are not to be included in the word count pursuant to Texas Rule of Appellate Procedure 9.4(i)(1).

*/s/Wm. Andrew Messer*
Wm. Andrew Messer

# APPENDIX A

Vernon's Texas Statutes and Codes Annotated
  Local Government Code (Refs & Annos)
    Title 2. Organization of Municipal Government (Refs & Annos)
      Subtitle C. Municipal Boundaries and Annexation
        Chapter 41. Municipal Boundaries

V.T.C.A., Local Government Code § 41.001

§ 41.001. Map of Municipal Boundaries and Extraterritorial Jurisdiction

Effective: September 1, 2019
Currentness

(a) Each municipality shall prepare a map that shows the boundaries of the municipality and of its extraterritorial jurisdiction. The municipality shall maintain a copy of the map in a location that is easily accessible to the public, including:

(1) in the office of the secretary or clerk of the municipality;

(2) if the municipality has a municipal engineer, in the office of the engineer; and

(3) if the municipality maintains an Internet website, on the municipality's website.

(a-1) A municipality shall make a copy of a map required under Subsection (a) available without charge.

(b) If the municipality annexes territory, the map shall be immediately corrected to include the annexed territory. The map shall be annotated to indicate:

(1) the date of annexation;

(2) the number of the annexation ordinance, if any; and

(3) a reference to the minutes or municipal ordinance records in which the ordinance is recorded in full.

(c) If the municipality's extraterritorial jurisdiction is expanded or reduced, the map shall be immediately corrected to indicate the change in the municipality's extraterritorial jurisdiction. The map shall be annotated to indicate:

(1) the date the municipality's extraterritorial jurisdiction was changed;

(2) the number of the ordinance or resolution, if any, by which the change was made; and

(3) a reference to the minutes or municipal ordinance or resolution records in which the ordinance or resolution is recorded in full.

(d) In addition to the requirements of this section, a home-rule municipality shall create, or contract for the creation of, and make publicly available a digital map that complies with this section. A digital map required under this subsection must be made available without charge and in a format widely used by common geographic information system software. If the municipality maintains an Internet website, the municipality shall make the digital map available on the municipality's website.

(e) A home-rule municipality that does not have common geographic information system software shall make the digital map available in any other widely used electronic format in accordance with Subsection (d).

**Credits**
Acts 1987, 70th Leg., ch. 149, § 1, eff. Sept. 1, 1987. Amended by Acts 1997, 75th Leg., ch. 970, § 1, eff. Sept. 1, 1997; Acts 2019, 86th Leg., ch. 1217 (S.B. 1303), § 1, eff. Sept. 1, 2019.

V. T. C. A., Local Government Code § 41.001, TX LOCAL GOVT § 41.001
Current through the end of the 2025 Regular and Second Called Sessions of the 89th Legislature.

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

# APPENDIX B



# Petitions for ETJ Release 5/6/2024

APPENDIX B

377 Investment Properties
57 ac

636 Denton Dev
87.1 ac

1505 Chinn
3.05 ac

2170 Collins Road Business Park
17.44 ac

North Texas Contracting
58.12 ac

Mutual First
20.88 ac

1175 S Trinity Rd
6.24 ac

Erwin
22.91 ac

6170 FM 1830
2.69 ac

Red Bird Ridge Addition Lots 1 & 2
2.61 ac

Red Bird Ridge Addition Lots 1-18 & 20
37.74 ac

Hawk
18.62 ac

Long Trail Investments
118.74 ac

Barr
5.07 ac

11351 Hilltop Rd
5.7 ac

Steinberg
31.63 ac

Peck
29.51 ac

CITY OF DENTON

Date: 5/6/2024

Page 6067

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Sherry Brown on behalf of Wm. Andrew Messer
Bar No. 13472230
sherry@txmunicipallaw.com
Envelope ID: 109844903
Filing Code Description: Brief Requesting Oral Argument
Filing Description: Reply Brief of City Appellants
Status as of 1/9/2026 7:14 AM CST

Associated Case Party: Attorney General Kenneth Paxton (in his Official Capacity

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Jennifer Holt | | jennifer.holt@oag.texas.gov | 1/8/2026 9:00:05 PM | SENT |
| Cole Wilson | | Cole.Wilson@oag.texas.gov | 1/8/2026 9:00:05 PM | SENT |
| Tristan AGarza | | tristan.garza@oag.texas.gov | 1/8/2026 9:00:05 PM | SENT |
| Lynn Saarinen | | lynn.saarinen@oag.texas.gov | 1/8/2026 9:00:05 PM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Allison Collins | 24127467 | Acollins@fosterswift.com | 1/8/2026 9:00:05 PM | SENT |
| Sherry  Brown | | sherry@txmunicipallaw.com | 1/8/2026 9:00:05 PM | SENT |
| Andy  Messer | | andy@txmunicipallaw.com | 1/8/2026 9:00:05 PM | SENT |
| Brad Bullock | | brad@txmunicipallaw.com | 1/8/2026 9:00:05 PM | SENT |
| Todd Disher | | todd@lehotskykeller.com | 1/8/2026 9:00:05 PM | SENT |
| William Thompson | | will@lkcfirm.com | 1/8/2026 9:00:05 PM | SENT |
| Cole Wilson | | cole.wilson@oag.texas.gov | 1/8/2026 9:00:05 PM | SENT |
| Guillermo  Trevino | | will.trevino@brownsvilletx.gov | 1/8/2026 9:00:05 PM | SENT |
| Lena Chaisson-Munoz | | lena.munoz@brownsvilletx.gov | 1/8/2026 9:00:05 PM | SENT |
| George Hyde | | ghyde@txlocalgovlaw.com | 1/8/2026 9:00:05 PM | SENT |
| Matthew Weston | | mweston@txlocalgovlaw.com | 1/8/2026 9:00:05 PM | SENT |
| David  Overcash | | david.overcash@wtmlaw.net | 1/8/2026 9:00:05 PM | SENT |
| Clark McCoy | | cmccoy@wtmlaw.net | 1/8/2026 9:00:05 PM | SENT |

Associated Case Party: City of Brownsville, Texas

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Sherry Brown on behalf of Wm. Andrew Messer
Bar No. 13472230
sherry@txmunicipallaw.com
Envelope ID: 109844903
Filing Code Description: Brief Requesting Oral Argument
Filing Description: Reply Brief of City Appellants
Status as of 1/9/2026 7:14 AM CST

Associated Case Party: City of Brownsville, Texas

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Lena Chaisson-Munoz | | lena.munoz@brownsvilletx.gov | 1/8/2026 9:00:05 PM | SENT |
| Will S.Trevino | | will.trevino@brownsvilletx.gov | 1/8/2026 9:00:05 PM | SENT |